ROBERT E. KELLEHER, a Minor, by his Father and Next Friend, Robert D. Kelleher, Plaintiff and Petitioner-Appellee, v. JASON HOOD *et al.*, Defendants-Appellees (Health Care Service Corporation, d/b/a Blue Cross-Blue Shield of Illinois, Respondent in Lien Adjudication-Appellant).

Second District   No. 2—92—0214

Opinion filed December 15, 1992.

Jeffrey B. Levens, of Augustine, Kern & Levens, Ltd., of Chicago, for appellant.

James E. Ocasek, of Cooney & Conway, and David J. Fitzpatrick, of Matayas & Norris, both of Chicago, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Respondent, Health Care Service Corporation (HCSC), appeals from the denial of its lien on a minor's estate. Respondent contends that the circuit court of Du Page County erred in applying the law, and that the Employee Retirement Income Security Act (ERISA) (29 U.S.C. §1001 *et seq.* (1988)) preempts Illinois case law.

Petitioner, Robert D. Kelleher, father and next friend of his minor son, Robert E. Kelleher (Bobby), has filed an amended motion to dismiss the appeal on the ground that the appeal was not timely filed. We first consider this preliminary question.

The following facts are relevant to our disposition of petitioner's motion to dismiss the appeal. On November 6, 1991, the trial court granted petitioner's motion to dismiss respondent's lien seeking reimbursement for paid medical expenses from Bobby's settlement with other parties in the suit. After granting petitioner's motion, the court set a hearing for an order of distribution on November 13, 1991, and said with reference to respondent's counsel:

> "Send him [HCSC counsel] a copy of the proposed order with respect to distribution, and you can take a look at that. And at that time I imagine there is going to be an order of dismissal entered too, and it will be for presentation of vouchers. And so we will have a final order at that time if you want to pursue it to the next level."

The trial court did not make a finding of enforceability or appealability with respect to its November 6, 1991, ruling.

On November 13, 1991, the trial court entered a final distribution order. At the same time, the court made a finding of enforceability and appealability.

On December 11, 1991, respondent filed a motion to reconsider ruling in the trial court. Petitioner answered by filing a motion to strike, arguing the November 6, 1991, order was final and appealable pursuant to Rule 304(b)(1) of the supreme court rules (134 Ill. 2d R. 304(b)(1)), and that respondent's motion had therefore been filed beyond the 30-day time limitation for filing post-trial motions or appeals.

On January 28, 1992, the trial court denied petitioner's motion to strike and ruled respondent's motion to reconsider had been timely filed. The trial court stated:

"Well, the motion to strike is denied. I think [HCSC] counsel's argument is persuasive. In the final order [of November 6, 1991] there was no 304(a) language granted, and it really wasn't even a dismissal of the claim or a party. Counsel I guess could have argued for a 308 finding that there is a question of law. No findings were given, and the final order was entered a week later. And I think his motion to reconsider is timely brought."

Petitioner's motion now before this court raises the same issue as to whether respondent timely filed. Petitioner contends that his motion should be granted and respondent's appeal should be dismissed because the appeal is not timely. Petitioner argues that the trial court made a final determination of respondent's status as a lienholder on November 6, 1991. Petitioner cites Supreme Court Rule 304(b)(1) (134 Ill. 2d R. 304(b)(1)) to support his position. Petitioner argues that Rule 304(b)(1) made it mandatory that respondent appeal or file its motion for reconsideration within 30 days of the trial court's November 6, 1991, ruling. Petitioner concludes that respondent's trial court motion to reconsider filed December 11, 1991, was not timely.

Respondent contends its December 11, 1991, motion to reconsider was timely filed and therefore its appeal is timely. Respondent argues that the trial court order of November 6, 1991, was not a final and appealable order. Respondent maintains that Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) controlled the matter, and not Rule 304(b)(1). Respondent reads Rule 304(a) to allow respondent to await a final and appealable order (which it argues was made November 13, 1991) before it was required to appeal or file post-trial motions.

Supreme Court Rule 304 reads in pertinent part as follows:

"(a) Judgments As To Fewer Than All Parties or Claims—Necessity for Special Finding. If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. Such a finding may be made at the time of the entry of the judgment or thereafter on the court's own motion or on motion of any party. The time for filing a notice of appeal shall be as provided in Rule 303. In computing the time provided in Rule 303 for filing the notice of appeal, the entry of the required finding shall be treated as the date of the entry of final judgment. In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties.

(b) Judgments and Orders Appealable Without Special Finding. The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:

(1) A judgment or order entered in the administration of an estate, guardianship, or other similar proceeding which finally determines a right or status of a party." 134 Ill. 2d R. 304.

■■ Here, Rule 304(a) has general applicability because the trial court order of November 6, 1991, applied to fewer than all of the claims or parties in a multiple-party action. Because the trial court made no express written finding of enforceability and appealability pursuant to its order, respondent could not appeal the order under Rule 304(a). *Arachnid, Inc. v. Beall* (1991), 210 Ill. App. 3d 1096, 1102.

Rule 304(b)(1) does not require petitioner to appeal the trial court order of November 6, 1991. The order was not final with respect to respondent's claim because the order contemplated future action. *In re Estate of Robertson* (1986), 144 Ill. App. 3d 701, 712.

Furthermore, it would not serve the purpose of Rule 304(b)(1) to make an appeal of the November 6, 1991, order mandatory in this case. One of the central reasons for making appeals mandatory under Rule 304(b)(1) is to insure the certainty of some issues during lengthy

procedures such as estate administration. (*People ex rel. A.M. v. Herlinda M.* (1991), 221 Ill. App. 3d 957, 963-64.) Here, there is no need for such safeguards because on November 6, 1991, the trial court clearly indicated it intended to make a final appealable order on the matter in question on November 13, 1991, one week after the order in question.

For the above reasons, we deny petitioners' motion to dismiss this appeal. We now move on to consider the issues raised on appeal by respondent.

### DENIAL OF LIEN AGAINST MINOR'S ESTATE

Respondent appeals from a circuit court order denying its reimbursement lien against funds received by the estate of Bobby Kelleher, a minor, as a result of Bobby's settlement with responsible tortfeasors.

On February 2, 1990, petitioner's son, Bobby, a minor at the time, was the rear-seat passenger in a car driven by Jason Hood. The car collided with another car driven by Sylvia S. Winiecki. In the collision, Bobby was injured. He received emergency and follow-up medical care for his injuries.

Respondent, d/b/a Blue Cross and Blue Shield, administers a group health and welfare plan (the Plan). The Plan paid a total of $6,332 for approximately 80% of Bobby's medical expenses. The Plan has been organized under ERISA.

The Plan has a reimbursement provision which provides as follows:

"If you or one of your covered dependents are injured by the act or omission of another person and benefits are provided for Covered Services described in this Certificate, you agree:

(a) to immediately reimburse Blue Cross and Blue Shield for any payments received, whether by action at law, settlement or otherwise, to the extent that Blue Cross and Blue Shield has provided benefits to you or your covered dependents; and

(b) that Blue Cross and Blue Shield will have a lien to the extent of benefits provided. Such lien may be filed with the person whose act caused the injury, the person's agent or a court having jurisdiction in the matter."

On August 15, 1990, petitioner, as Bobby's father and next friend, sued the drivers of the two vehicles involved in the collision as well as Leonard Stateczny, the owner of the car driven by Hood. The complaint alleged the suffering of economic loss as a result of the colli-

sion, in part because medical bills were incurred. The parties to the suit reached a settlement which the court approved on September 3, 1991. The settlement was for $37,500. The court ordered the net amount of the settlement after court-approved fees, $27,538.55, placed in a bank account for Bobby.

Before the settlement was approved, respondent claimed a lien on the settlement citing the reimbursement provision of the Plan. On August 19, 1991, petitioner filed a motion to adjudicate lien seeking to deny the lien. Petitioner relied on Illinois case law that does not allow subrogation against a minor's estate for medical expenses.

On November 6, 1991, the circuit court ruled that respondent's lien "does not apply to the funds recovered by the minor." In making its ruling, the court agreed with petitioner that Illinois case law was dispositive of the issue.

On appeal respondent contends that the Illinois cases deemed controlling by the circuit court (In re Estate of Hammond (1986), 141 Ill. App. 3d 963, and Estate of Woodring v. Liberty Mutual Fire Insurance Co. (1979), 71 Ill. App. 3d 158) (the Cases) are not controlling in this case. Respondent specifically alleges that the Cases are not controlling because: (1) there are fundamental and dispositive distinctions between the facts of the Cases and the facts of this case; (2) there are strong public policy reasons for not following the Cases; and (3) courts often allow payments from minors' estates notwithstanding the Cases.

Respondent first attempts to distinguish Hammond and Woodring from the facts of this case. Respondent notes that the Cases involved medical payments made pursuant to med-pay provisions in an automobile insurance plan while petitioner's case involves medical payments made pursuant to a health and welfare plan which, respondent asserts, is not even insurance. Respondent contends that because Hammond and Woodring were both med-pay-auto-insurance cases they are limited to med-pay-auto-insurance cases and therefore are not applicable here.

Respondent also attempts to distinguish the Cases from the facts of this case with respect to whether the medical services provided were on the minor's own credit. Respondent contends that the medical services rendered to Bobby, unlike the minors in Hammond and Woodring, were on his own credit. To support this contention, respondent asserts that medical service providers typically ask whether a child seeking medical services is covered under a health plan. Respondent asserts that an affirmative answer shows that the services are provided on the child's own credit. Without addressing whether Bobby was asked this question and what his answer might have been,

respondent argues that hospital bills showing petitioner was a guarantor of Bobby's hospital expenses establish that the hospital must have rendered services to Bobby on his own credit.

Finally, respondent argues that the naming of a minor family member as a covered dependent "manifests the parties' intent to confer third-party beneficiary status upon the child, and makes him a 'direct contract beneficiary.' "

In response to the above arguments, petitioner points to the plain language of the Plan's reimbursement clause and argues that under the clause only petitioner, the subscriber to the Plan, and not his covered dependents, agrees to reimbursement. Petitioner maintains that *Hammond* and *Woodring* only prohibit reimbursement from settlements received by minors and therefore do not affect reimbursement from subscribers. Petitioner also argues that respondent has not shown that *Hammond* and *Woodring* are limited to med-pay-auto-insurance cases and that the *Hammond* and *Woodring* analysis implicitly rejected respondent's contention that the services were provided on the minor's own credit even if that point had been established.

■ *Hammond* and *Woodring* are in agreement on the following rules. Because parents are primarily liable for the medical expenses of their minor children, the parent has the obligation to pay the medical expenses of the minor child, and an action to recover for medical expenses lies in the parent, not the child. (*Hammond*, 141 Ill. App. 3d at 965.) Because of the parents' primary liability, medical expenses paid on behalf of a minor child are deemed to be for the benefit of the parent, not the child. (*Hammond*, 141 Ill. App. 3d at 965.) A minor is liable for the sale of necessaries such as medical expenses only if on his own credit, and not the credit of another, including a parent. (*Woodring*, 71 Ill. App. 3d at 160.) Because the benefits are deemed received by the parent, a minor's estate has received no benefit, and an insurer who paid the benefits has no subrogation rights against a payment by a tort-feasor in settlement of a claim by the minor's estate. *Woodring*, 71 Ill. App. 3d at 160.

■ Contrary to respondent's assertions, we find nothing in these cases limiting them to med-pay-auto-insurance cases. The gist of the cases is that a minor child's medical expenses are the liability of the child's parents and therefore it is the parents who receive any medical benefits paid in the name of a minor child. It follows that because the parents have received the benefits, the child has not, and the child's estate cannot be reached by liens seeking reimbursement for benefits it has not received. These principles apply whenever medical expenses are involved and are not limited by who paid the medical expenses.

Accordingly, respondent's argument attempting to distinguish *Hammond* and *Woodring* on the ground that they only apply to medpay-auto-insurance cases fails.

As noted by respondent, the *Hammond* and *Woodring* principles suggest an exception to the rule prohibiting subrogation liens against a minor's estates for medical expenses if the minor received the benefits on his own credit. However, in this case, respondent has failed to show that Bobby received the benefit on his own credit. Respondent did not show that the hospital (or any of the other medical providers in the case) even asked Bobby anything with respect to credit. Respondent has failed to provide any evidence in this case to support its premise.

Respondent's contention that petitioner acting as a guarantor proves Bobby received the service on his own credit also fails. Petitioner acting as a guarantor simply does not establish that services were rendered on Bobby's own credit.

Finally, *In re Estate of Scott* (1991), 208 Ill. App. 3d 846, the case relied on by respondent for its contention that naming a family member as a covered dependent confers third-party beneficiary status, is inapposite. *Scott* involves a clause in an employee benefit plan which gives specific third-party beneficiary rights, and the case does not involve a minor. (*Scott*, 208 Ill. App. 3d 846.) Here there is no clause conferring specific third-party beneficiary rights, and, again, the gist of the matter is that a minor's estate is in question.

For the above reasons, we find that Illinois case law, unless preempted, is applicable in this case and that the circuit court correctly relied on the case law in denying respondent's lien.

We find respondent's public policy and inherent court power arguments unpersuasive. The only question remaining in this case is whether ERISA preempted the Illinois case law in question.

### ERISA PREEMPTION

At issue is whether the ERISA preemption clause acts to preempt the State law (*Hammond* and *Woodring*) relied on by the trial court in making its ruling. The ERISA preemption clause provides as follows:

> "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a) (1988).

Respondent contends that the State law in question clearly "relates to" the Plan and therefore falls under the ERISA preemption

clause. Respondent argues that ERISA preemption acts any time the outcome of a dispute regarding some aspect of an ERISA plan turns on whether a court applies State law. Respondent maintains that ERISA preemption applies in this case because the *Hammond* and *Woodring* rules adversely affected the ruling with respect to the reimbursement clause of the Plan.

Petitioner contends ERISA does not preempt State law here because there is no conflict between the State law in question and the ERISA plan in question. Petitioner relies on the plain language of the Plan's reimbursement clause. Petitioner argues that the clause simply does not encompass the issue of recovery from the estate of a minor dependent of a subscriber and therefore the State law controlling that issue does not "relate to" the Plan.

As the contentions of the parties show, the key to the ERISA preemption clause is the words "relate to." The outcome of this case depends on the construction given to those words.

■ Congress used the words "relate to" in the ERISA preemption clause in their "broad sense" and did not intend that the clause only apply to State laws specifically designed to affect ERISA plans. (*F M C Corp. v. Holliday* (1990), 498 U.S. 52, 58, 112 L. Ed. 2d 356, 364, 111 S. Ct. 403, 408.) A State law relates to an ERISA plan if it has a "connection with or reference to such a plan." *Pilot Life Insurance Co. v. Dedeaux* (1987), 481 U.S. 41, 47, 95 L. Ed. 2d 39, 48, 107 S. Ct. 1549, 1553.

But there are limits to the reach of the ERISA preemption clause. ERISA preemption does not extend to State laws of general applicability that make no reference to an ERISA plan and function irrespective of such a plan. (*Ingersoll-Rand Co. v. McClendon* (1990), 498 U.S. 133, 140, 112 L. Ed. 2d 474, 484, 111 S. Ct. 478, 483.) ERISA preemption does not apply to a State law which affects an ERISA plan "in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." (*Shaw v. Delta Air Lines, Inc.* (1983), 463 U.S. 85, 100 n.21, 77 L. Ed. 2d 490, 503 n.21, 103 S. Ct. 2890, 2901 n.21.) ERISA does not preempt a State law which has only a tangential impact on an ERISA plan. *Golen v. Chamberlain Manufacturing Corp.* (1985), 139 Ill. App. 3d 53, 57.

■ Here, neither the ERISA statute nor a reasonable reading of the Plan's reimbursement clause requires the preemption of the State laws set forth in *Hammond* and *Woodring*. ERISA itself is silent with respect to reimbursement and subrogation in ERISA plans. (*Davis v. Line Construction Benefit Fund* (W.D. Mo. 1984), 589 F. Supp. 146,

149.) The Plan's reimbursement clause only entitles respondent to reimbursement from the subscriber.

The Plan's reimbursement clause provides, "If you or one of your covered dependents are injured *** you agree (a) to immediately reimburse." This plain language clearly limits the duty to reimburse to the subscriber and does not extend the duty to covered dependents.

The part of the Plan's reimbursement clause which allows liens does not change this. Subsection (b) of the reimbursement clause allows the placing of liens to the extent of benefits provided, but does not specifically extend the scope of recovery beyond the subscriber. Based on our reading of the Plan's reimbursement clause as a whole, we conclude that the Plan allows reimbursement, including by liens, only from a subscriber and not from covered dependents.

The only minors involved in reimbursement cases such as this case are likely to be covered dependents. Because the Plan's reimbursement clause limits its reach to subscribers who are unlikely to be minors, State law controlling the rights of minors has only a tangential impact on the Plan. Moreover, the State laws do not affect the design of the Plan to seek reimbursement from a nonminor subscriber.

*Hammond* and *Woodring* do not directly refer to ERISA or to employee health and welfare benefit plans. As respondent pointed out, *Hammond* and *Woodring* themselves involve med-pay provisions in auto insurance policies. We conclude that these State laws are of general applicability, make no reference to an ERISA plan, and function irrespective of such plans. Therefore any connection of these State laws to this ERISA plan is tenuous and remote. Unlike cases where ERISA preemption is necessary, the State laws in this case do not prevent the administrator of this ERISA plan from doing what the Plan permits, seeking reimbursement from a subscriber to the Plan.

Respondent raises a final question regarding ERISA preemption. The question is whether ERISA preempts State laws that adversely impact Federal uniformity. Respondent answers the question affirmatively and concludes "[u]nless Plaintiff is prepared to demonstrate that the precedent of *Hammond* applies equally to ERISA-plan subscribers in general, and [the Plan] subscribers in particular, anywhere in the country, it is preempted by the Plan's reimbursement provision."

Respondent points to a Minnesota decision (*Hunt v. Sherman* (Minn. 1984), 345 N.W.2d 750) and asserts that, on facts parallel to those here, the Minnesota Supreme Court held that ERISA preempted Minnesota case law which would have denied reimbursement.

Respondent concludes that because *Hunt* produced a result different from that in *Hammond* and *Woodring* ERISA requires the preemption of the Cases or else there will not be Federal uniformity.

■ Respondent is correct that ERISA preemption can apply to State laws "that risk subjecting plan administrators to conflicting state regulations." (*F M C Corp. v. Holliday*, 498 U.S. at 59, 112 L. Ed. 2d at 365, 111 S. Ct. at 408.) However, respondent has failed to show how the Illinois State laws in this case would risk subjecting plan administrators to conflicting State regulations.

*Hunt* is different from this case. The subrogation clause in *Hunt* gave the *Hunt* ERISA plan administrator specific subrogation rights "to each participant's right of recovery." (*Hunt*, 345 N.W.2d at 751.) The reimbursement clause here, as shown above, gives the Plan administrator reimbursement rights only with respect to the subscriber. Because of the difference between the clauses in these cases, we are not persuaded that ERISA uniformity considerations require the preemption of the State laws in question here. The Plan's reimbursement clause, whether construed under the laws of Illinois or Minnesota, limits the duty to reimburse to the subscriber. Under either State law, then, reimbursement under the Plan cannot be had from a minor's estate. Because respondent has failed to show a negative effect on Federal uniformity in the case at bar, we conclude that Federal uniformity does not require the preemption of *Hammond* and *Woodring*.

For all the foregoing reasons, we hold that on the facts of this case ERISA does not preempt the State laws espoused in *Hammond* and *Woodring*.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS, P.J., and DOYLE, J., concur.