In re the ESTATE OF Charles REED, a Minor Child,

and

Laurence S. Aylesworth, Ph.D., Appellant,

v.

Christine Reed, Estate Representative, Appellee.

No. 08CA0146.

Colorado Court of Appeals, Div. V.

Dec. 24, 2008.

The Viorst Law Offices, P.C., Anthony Viorst, Denver, Colorado, for Appellant.

John R. Fuller, P.C., John R. Fuller, Aurora, Colorado, for Appellee.

Opinion by Judge VOGT.

Appellant, Laurence S. Aylesworth, appeals the probate court order approving a personal injury settlement entered into on behalf of a child, Charles Reed, by his mother, appellee Christine Reed. The settlement did not provide for payment for accident-related medical services provided by Aylesworth to Charles. We vacate the order and remand with directions.

## I.  Background

Charles was injured in a 2004 automobile accident. He was four years old at the time. After neurological testing and consultation, Charles was diagnosed with post-traumatic stress disorder, which manifested itself in severe headaches, nightmares, flashbacks, stuttering, and behavioral changes. He was referred to Aylesworth, a psychologist, who provided therapy to treat Charles's disorder.

In 2006, a negligence action was filed against the driver by "Charles Reed, a minor, by and through Christine Reed his mother and legal guardian," and two other injured parties. After a settlement was reached, the attorney who had brought the lawsuit filed a "Petition to Settle Personal Injury Claim" in the probate court. *See* § 15–14–412(1), C.R.S.2008 (authorizing probate court, without appointing conservator, to ratify any transaction necessary to meet foreseeable needs of a protected person, including settlement of a protected person's claim).

The petition stated that the driver's insurer had agreed to settle Charles's claim for "$15,000.00 inclusive of outstanding medical bills"; that Charles had been treated for accident-related injuries by various providers, including Aylesworth, whose bill for $7,703.66 represented the largest portion of the $9,486.19 incurred for Charles's treatment; that Charles's parents, who were responsible for his medical bills, had declared bankruptcy, which "caused the medical bills to be discharged"; and that the $9,366.82 remaining from the $15,000 settlement after payment of attorney fees and costs would be placed in a structured annuity, to be paid to Charles when he reached maturity.

Aylesworth, proceeding pro se, filed an objection to the petition. He told the probate court that he had provided services to Charles pursuant to an agreement with Charles's mother that his bill would be paid from the proceeds of any settlement obtained on behalf of Charles. Aylesworth stated that the parents' bankruptcy petition had not been served on him and that he was not listed in the bankruptcy proceeding as a creditor whose bills had been discharged.

The probate court held a hearing, at which it heard argument by Aylesworth and by the attorney who had filed the petition, as well as testimony by Christine Reed that the proposed settlement was in Charles's best interests. Aylesworth provided the court with a copy of a "Health Care Provider Lien" that included the following provisions:

(1) A statement signed by Christine Reed that:

Upon receiving proceeds on my behalf, I hereby authorize and direct my attorney(s) . . . to pay directly to Asian Psychological Services, Inc. (APS) [Aylesworth's company] such sums from any settlement, judgment, or verdict from my personal injury claim based on the accident referenced above, as may be necessary to pay in full APS, for the unpaid balance for services rendered on my behalf.

. . . .

I fully understand that I am directly and fully responsible to APS for all professional bills submitted [by] them for services rendered to me, regardless of the outcome of my personal injury claim. This agreement is made in consideration of APS awaiting payment for services rendered to

me and to grant to APS security for the payment of APS's bills. . . .

(2) A statement, signed by Aylesworth as the representative of APS, that:

APS agrees that in exchange for execution of this lien by the patient, APS will refrain from referring any bills for professional services rendered to the patient to any third party for collection or take any legal action to collect these bills until the personal injury claim is resolved.

(2) A statement, signed by Christine Reed's former attorney, that:

The undersigned attorney for the above patient hereby agrees to withhold such sums from any settlement, judgment, or verdict and to pay such sums directly to APS as required by the terms of this lien.

Aylesworth argued that the lien was enforceable and entitled him to payment from the estate created by Charles's personal injury settlement. In the alternative, he argued that, even without a contract, he was entitled to the value of his services on a quantum meruit theory to avoid unjust enrichment.

The probate court entered an order approving the personal injury settlement without providing for payment to Aylesworth. The court concluded that Christine Reed was responsible for payment of Charles's medical bills; that she could have sued the driver for those medical expenses, but did not do so; and that the lien agreement between Aylesworth and Christine Reed was not enforceable against settlement funds belonging to Charles. The court did not address Aylesworth's contention that, apart from the lien, he had a right to recover on a theory of quantum meruit or unjust enrichment.

## II. Aylesworth Has Not Established That His Lien Was Enforceable Against Charles's Estate

■ Aylesworth first contends that his lien should be deemed valid and enforceable against the estate created by Charles's personal injury settlement. We disagree.

We review de novo the probate court's interpretation of Colorado law and its interpretation of the written lien agreement. See Ad Two, Inc. v. City & County of Denver, 9 P.3d 373, 376 (Colo.2000); Estate of Schiola v. Colorado Dep't of Health Care Policy and Financing, 51 P.3d 1080, 1083 (Colo.App. 2002).

As an initial matter, we agree with the probate court that Christine Reed did not validly encumber the funds awarded to Charles in the personal injury settlement.

■ As the parties primarily liable for the medical expenses of their minor children, parents have a legally recognized claim for reimbursement for those medical expenses when their minor child has sustained a physical injury. See Kinsella v. Farmers Insurance Exchange, 826 P.2d 433, 435 (Colo.App. 1992); see also Odell v. Public Service Co., 158 Colo. 404, 405, 407 P.2d 330, 331 (1965); Kelleher v. Hood, 238 Ill.App.3d 842, 179 Ill.Dec. 4, 605 N.E.2d 1018, 1023 (1992).

While the record here does not include the complaint or the settlement agreement in the personal injury case, it is undisputed that Charles's parents were not named as plaintiffs in that case and did not assert their own claim for reimbursement. Rather, the personal injury action was brought by Charles "by and through Christine Reed his mother and legal guardian." However, Christine Reed's status as the party bringing the action on behalf of Charles did not make her the real party in interest or give her a separate, personal interest in the settlement proceeds. See Antonopoulos v. Town of Telluride, 187 Colo. 392, 399, 532 P.2d 346, 350 (1975); Visser v. Mahan, 111 P.3d 575, 578 (Colo.App.2005).

■ Thus, the lien executed by Christine Reed in favor of Aylesworth purported to encumber settlement proceeds that she did not own. This contravenes not only the general rule that property can be encumbered or conveyed only by the owner, see Sant v. Stephens, 753 P.2d 752, 759 (Colo. 1988); GMAC Mortgage Corp. v. PWI Group, 155 P.3d 556, 558 (Colo.App.2006); Commercial Factors of Denver v. Clarke & Waggener, 684 P.2d 261, 263 (Colo.App.1984), but also the principle that minors are entitled to protection against actions by parents that adversely affect their right to recovery. See

*Cooper v. Aspen Skiing Co.,* 48 P.3d 1229, 1233–34 (Colo.2002) (reviewing Colorado statutes and case law that "illustrate Colorado's overarching policy to protect minors, regardless of parental motivations, against actions by parents that effectively foreclose a minor's rights of recovery"), legislatively overruled in part by § 13–22–107, C.R.S.2008.

We do not agree with Aylesworth that the lien at issue here should be deemed enforceable because the *Cooper* court acknowledged and agreed with the principle that parents have a liberty interest in the care, custody, and control of their children. Immediately after its recognition of that principle, the supreme court stated: "[W]e do not believe that right encompasses a parent's decision to disclaim a minor's possible future recovery for injuries caused by negligence by signing a release on the minor's behalf." *Id.* at 1235 n. 11.

Aylesworth cites no other authority or rationale that would have permitted Christine Reed to grant a lien on a settlement that belonged to her child, not to her. Thus, while we do not decide whether such a lien might be available under theories not argued here, we conclude that the probate court did not err in declining to recognize Aylesworth's lien as a contractual obligation of Charles's estate.

### III. Aylesworth May Be Entitled to Compensation on an Equitable Theory of Quantum Meruit or Unjust Enrichment

■ Aylesworth further contends that, even if the lien is deemed unenforceable, he has a right, under principles of unjust enrichment, to recover from the estate because he provided necessary medical treatment to the child. We conclude that further proceedings are required to resolve this issue.

Before granting a petition to approve a personal injury settlement for a child or other protected person, the probate court is required to determine that the settlement "is in the best interest of the protected person." § 15–14–412(1)(b), C.R.S.2008. The court is also to consider certain statutorily enumerated factors, including, as relevant here, "[t]he financial needs of the protected person and

... the interest of creditors." §§ 15–14–411(3)(a), 15–14–412(2), C.R.S.2008.

■ Thus, while the court must focus on the needs of the child, it is not required to do so to the complete exclusion of other considerations. *See In re Estate of Lembach,* 622 P.2d 606, 607–08 (Colo.App.1980) (probate court has jurisdiction to reopen proceedings with respect to settlement of estates and to afford equitable remedy where warranted); *Perkins v. Westcoat,* 3 Colo.App. 338, 341–43, 33 P. 139, 139–40 (1893) (equitable claim to recover against estate for value of necessaries furnished to decedent could be brought in court having jurisdiction of estate); *see also* C. Jean Stewart, *Court Approval of the Settlement of Claims of Person Under Disability,* 35 Colo. Law. 97, 100–01 (Aug.2006) (noting that, (1) since expiration of Colorado's no-fault automobile insurance law, probate courts are seeing more cases in which unpaid medical claims can dwarf injured party's insurance settlement; (2) "[t]here is some flexibility to compromise these claims"; and (3) the probate court's responsibility is "to be scrupulously careful that every potential source of recovery has been exhausted").

■ It is undisputed in this case that Charles's parents were responsible in the first instance for paying for Aylesworth's services. *See Pioneer Construction Co. v. Bergeron,* 170 Colo. 474, 481, 462 P.2d 589, 593 (1969); *In re Marriage of Weaver,* 39 Colo. App. 523, 527, 571 P.2d 307, 310 (1977); *see also M.S. v. People in Interest of L.R.S.,* 812 P.2d 632, 635 (Colo.1991) (discussing statutes imposing support obligation on parents).

However, if a parent cannot or will not pay for a child's "necessaries"—including necessary medical care—the provider of the necessaries may look to the child or, if the child has an estate, to the child's estate for payment.

This principle was recognized over a century ago in *Perkins.* In that case, a mother sued her daughter's estate for the value of necessaries she furnished to her daughter before and after the daughter's marriage. The appellate court held that the mother could proceed against the daughter's estate to recover sums she had paid to support her

daughter, "not on the ground of any liability to pay on the part of the child, but upon equitable principles, because in such case it is right that the estate should bear, or at least share, the burden of the support." 3 Colo. App. at 342, 33 P. at 140.

Although the right to recover from a minor child's estate for necessary medical care does not appear to have been addressed in any later Colorado cases, the principle is well-established in the case law of other jurisdictions. *See Williams v. Baptist Health Systems, Inc.,* 857 So.2d 149, 151–52 (Ala.Civ. App.2003) (where minor patient's mother's bankruptcy barred provider of medical services from recovering from her for necessary medical services rendered during her child's minority, provider could recover reasonable value of such necessaries from minor, irrespective of existence of a contract); *Garay v. Overholtzer,* 332 Md. 339, 631 A.2d 429, 443–45 (1993) (although contractual obligations of minors are generally voidable, and parents have duty to support and care for child, provider of necessaries can recover from child, under theory of quasi-contract, for value of medical services if parent is unable to pay); *Siegel v. Hodges,* 15 A.D.2d 571, 222 N.Y.S.2d 989, 991 (N.Y.App.Div.1961) (parents' obligation to support child continues even if child has its own estate; one who furnishes necessaries to child cannot recover from child if parents are financially able to pay, but child may be held liable if parent is unable to pay); *State v. Cohen,* 57 Ohio App.3d 30, 566 N.E.2d 187, 188–89 (1989) (if parents fail or refuse to pay for emergency medical care furnished to minor, provider may look to child, under theories of quasi-contract or unjust enrichment, for reasonable value of services furnished); *Greenville Hospital System v. Smith,* 269 S.C. 653, 239 S.E.2d 657, 658 (1977) (probate court erred in ordering payment of hospital services out of minor's estate without establishing that parents were unable to pay; if such showing were made on remand, order requiring payment would be affirmed); *Gardner v. Flowers,* 529 S.W.2d 708, 710 (Tenn.1975) (in accordance with rule rendering child liable for reasonable value of essential medical treatment for which parents could not pay, hospital was entitled to seek payment for services

out of child's settlement in action against tortfeasor); *but see In re Guardianship of Volk,* 514 N.E.2d 1290, 1290 (Ind.Ct.App. 1987) (probate court was not required to order payment to doctor out of child's cash settlement for her injuries, where doctor did not file lien and there was nothing to indicate that parents were unable to pay the bill; court noted that doctor was "entitled to be paid for his services, but ... he does not have an absolute right to invade the minor's estate").

■ As recognized in these cases, a provider is entitled to recover only the fair and reasonable value of the services provided, which may or may not be the same as the amount of the provider's bill. *See Williams,* 857 So.2d at 151; *Garay,* 631 A.2d at 443 n. 11; *Gardner,* 529 S.W.2d at 711–12.

■ Additionally, before a provider may seek to recover on a theory of unjust enrichment, the provider must establish that the child's parents are in fact unable or unwilling to pay. *See Garay,* 631 A.2d at 445; *Greenville Hospital,* 239 S.E.2d at 659.

■■ If the provider can establish that the child's parents are unwilling or unable to pay, the probate court has jurisdiction to determine whether the provider is entitled to recover the reasonable value of his or her services on a theory of unjust enrichment or quantum meruit. To recover under such a theory, the party seeking recovery must show that, at his or her expense, the other party received a benefit under circumstances that would make it unjust for the other party to retain the benefit without paying. *Robinson v. Colorado State Lottery Division,* 179 P.3d 998, 1007 (Colo.2008); *Salzman v. Bachrach,* 996 P.2d 1263, 1265–66 (Colo.2000).

### IV. Application

As noted above, the probate court did not address Aylesworth's contention that he was entitled to compensation for the services he had provided on a theory of quantum meruit or unjust enrichment, and we have concluded that further proceedings are required to resolve this issue.

It appears undisputed that the services Aylesworth provided were necessary to treat the post-traumatic stress disorder Charles suffered as a result of the accident. However, the probate court heard no testimony as to whether the amount billed for those services represents their reasonable value.

Moreover, the record does not establish whether Aylesworth has sought payment from Charles's parents and, if so, whether the parents are in fact unable or unwilling to pay him. If Aylesworth can obtain recovery from the parents, he is not entitled to any recovery out of Charles's estate. However, if the parents are unable or unwilling to pay, the probate court must determine whether, as a matter of equity and upon consideration of the factors set forth in section 15–14–411(3), Aylesworth is entitled to any recovery for the services he provided.

The order is vacated and the case is remanded for further proceedings in accordance with the views set forth here.

Judge RUSSEL and Judge GABRIEL concur.