2024 IL App (2d) 230335-U
No. 2-23-0335
Order filed September 20, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CARRINGTON MORTGAGE SERVICES, LLC, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Nos. 19-CH-893 |
| | ) | 19-P-806 |
| | ) | |
| ANGELA ISRAEL, as Administrator of the Estate of Rosemarie Green, | ) ) ) | |
| Defendant-Appellee | ) ) | |
| | ) | |
| (The United States of America and The Department of Housing and Urban Development, Defendants). | ) ) ) | Honorable Patricia S. Fix Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Birkett and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: Trial court's order granting administrator's motion for final accounting and distribution of sale proceeds is affirmed.

¶ 2    Defendant, Angela Israel, was appointed by the court as the independent administrator of the estate of Rosemarie Green (Israel's sister), who died intestate.  Plaintiff, Carrington Mortgage

Services, LLC, appeals the trial court's order granting Israel's motion for a final accounting and to distribute proceeds from the sale of certain real property. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In 2010, Green borrowed from plaintiff's predecessor $419,225 to purchase real estate in Gurnee. Green executed a promissory note, promising to repay the loan, and obtained a mortgage on the property to secure the loan. As of June 1, 2022, the amount due on the note and mortgage was $496,985.43. Moreover, the Internal Revenue Service (IRS) and Department of Housing and Urban Development (HUD) (collectively, United States) later recorded liens and a subordinate mortgage against the property which, in March 2022, totaled $51,235.40 and $120,643.87, respectively.

¶ 5      On May 31, 2019, Green died intestate. On August 1, 2019, plaintiff filed a foreclosure complaint pursuant to the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq*. (West 2018)). One month later, on September 6, 2019, Israel opened a probate estate, and, on September 24, 2019, the court appointed Israel as the estate's administrator.

¶ 6      On September 14, 2020, pursuant to section 20-6(b) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/20-6(b) (West 2018)), Israel filed a petition to approve the sale of Green's real estate free and clear of all liens. The petition alleged that the property had an estimated value of $499,000, but liens against it totaling more than $615,500. Israel argued that granting the petition was necessary for proper administration of the estate, noting, in part, that, due to certain COVID-19 measures, foreclosures were paused. As relevant here, the petition named as respondents plaintiff, based on the mortgage, and the United States, based on the IRS tax liens and the HUD subordinate mortgage.

¶ 7    On September 25, 2020, the foreclosure court consolidated the foreclosure and probate actions and transferred the proceedings to probate court. Israel and the United States ultimately agreed that the United States would release its liens to allow the property sale to proceed, but, in exchange, Israel's claims for estate-administration expenses (first-class claims) would be subordinate to those liens (third-class claims). In other words, the United States would be paid first, ahead of the estate-administration claims. Israel then filed an amended section 20-6(b) petition, removing the United States as a respondent.

¶ 8    On July 19, 2021, Israel moved for summary judgment on the amended section 20-6(b) petition. The next day, plaintiff filed a cross-motion for summary judgment, seeking a foreclosure sale. In its motion, plaintiff argued,

"At issue before this court is whether this court should enter a judgment of foreclosure in favor of [plaintiff], which would provide for the judicial sale of the property, or whether this court should grant [Israel's] Amended Petition, which would strip [plaintiff's] Mortgage from the Property and allow the Property to be sold at a private sale free and clear of [plaintiff's] Mortgage.

If a Judgment of Foreclosure is entered in favor of [plaintiff] in the Mortgage Foreclosure, the property would be sold at a judicial sale and the proceeds would be paid first to satisfy [plaintiff's] Mortgage on the Property, and any remaining proceeds would be held until further order of the court and shall be distributed by this court pursuant to Illinois' established lien priority law.

By contrast, if judgment is entered in favor of [Israel], the Property would be sold free and clear of [plaintiff's] Mortgage. *[Plaintiff] would be treated as an unsecured creditor in the probate action and be forced to file a seventh class claim as an unsecured*

*creditor.* Although [plaintiff] is currently owed over $420,000.00, the ultimate result from the Amended Petition would be that [plaintiff] would likely receive less than $200,000,00, resulting in a loss in excess of $220,000.00 on its Mortgage." (Emphasis added.)

¶ 9 The court (Judge Elizabeth Rochford) heard the cross-motions for summary judgment and orally ruled on December 30, 2021, denying plaintiff's motion on the foreclosure complaint and granting Israel summary judgment on the amended section 20-6(b) petition. On January 10, 2022, the court entered the order of sale, memorializing its oral ruling. The court found that, given the lack of personal property and that the real estate was encumbered with liens exceeding its value, sale of the real estate was necessary to properly administer the estate. It noted that it could not, due to sovereign immunity, order the sale free of the United States' liens. However, it granted Israel leave to sell the property free of plaintiff's mortgage, specifying that the "lien is hereby vacated and removed." Moreover, the court ordered Israel to "retain the proceeds from the sale *** subject to further order of this Court." Plaintiff did not appeal the court's January 10, 2022, order. (Hereinafter, the "sale order").

¶ 10 After waiting exactly 30 days, on February 11, 2022, Israel sold the property in a private sale for $465,000. Israel paid $27,900 in realtor commissions, $2,340 to her counsel for title work, and other costs associated with the sale and closing, ultimately retaining $409,244.12 in net proceeds from the sale.

¶ 11 On March 28, 2022, Israel filed an amended motion to approve a final accounting and distribution of the sale proceeds, proposing payment of $129,936.16 to Israel and her counsel, $209,776.41 to the United States (pursuant to their agreement), and $27,264.69 to plaintiff. (The motion also proposed holding $50,000 for final expenses). Plaintiff objected, arguing that it should

receive all sale proceeds and, further, that it should be reimbursed the $27,900 paid in realtor commissions.

¶ 12    On September 25, 2023, after an evidentiary hearing, the court (Judge Patricia Fix) issued its order distributing the sale proceeds (hereinafter, "distribution order"), rejecting plaintiff's arguments and approving the final accounting with minor changes. In sum, it noted that the court had previously exercised discretion to order the sale under the Probate Act, that order was never appealed, and the court's task was now "narrowly focused on the priority of payment in administering the estate which this court believes should be done by following [section 18-10 of the Probate Act (755 ILCS 5/18-10 (West 2018))]." It noted that section 18-10's classification system provides classes for lienholders and other claimants, as well as an order for claim preference, which was established based on the "sound public policy" that orderly administration of estates required that administrators and attorneys performing their duties could be assured compensation for their reasonable efforts and expenses. However, the court noted, plaintiff's arguments sought a distribution of sale proceeds maximizing only a single creditor, itself, contrary to the Probate Act's purpose. The court noted that section 18-10 does not provide that a secured creditor is first in line to receive proceeds in full satisfaction of a lien, and that, although plaintiff opposed the possible non-recovery of its debt as a seventh-class claimant, that potential outcome had been considered by the court in the January 2022 sale order, yet the court had, nevertheless, directed that the sale under section 20-6(b) proceed.

¶ 13    The court further found that plaintiff's reading of section 20-6(b) would have: (1) the property sold free of the mortgage or any other liens; (2) if the sale proceeds were insufficient to satisfy all liens, the court should resolve questions of priority and adjust equities among the lienholders and interested parties; and (3) only then, *after* the lienholders had been satisfied from

the sale proceeds, and *only* if any amount remained, could the court address any other estate claims. The court disagreed with plaintiff's interpretation, finding instead that, once the property was sold free of all liens, the sale proceeds became part of the estate. As such, any lienholders or former lienholders were left with a claim against the sale proceeds, which the court must satisfy from the sale proceeds and by adjusting all equities and questions of priority. Relying upon in *In re Estate of Funk*, 221 Ill. 2d 30 (2006), the court here found that, whether or not plaintiff was a secured creditor, it was reduced under section 18-10 to a seventh-class claimant. Moreover, because there were multiple other higher-class claims, including Israel's estate administration expenses and the United States' claims, the "proverbial well ha[d] run dry" by the time the seventh class of claims was reached.

¶ 14    Finally, the court noted that the issue of how and in what order plaintiff was to be paid from the sale proceeds was arguably determined upon the sale order, which allowed the sale and removed plaintiff's lien. The court found that, as the sale order remained in effect because plaintiff did not challenge or appeal it, its hands were tied with respect to the order of claim preference under section 18-10. The court held that plaintiff was "relegated to a [s]eventh[-]class claimant pursuant to the Probate Act and the extinguished [mortgage] is transformed into a [seventh-]class claim which is then satisfied out of the proceeds of the sale, which are an estate asset." The court noted that the legal term "satisfaction" differs from performance and, therefore, does not require plaintiff to receive full payment. Although the court recognized plaintiff's argument that estate administrators may not take a property secured by a lien and use it to pay estate claims without first discharging the lien, it found that plaintiff missed "the crucial step that was taken in this case that actually discharged its lien" and "[o]nce the sale occurred free of all liens, the proceeds did

become an asset of the estate and claims and expenses of the estate are allowed to be paid from those assets."

¶ 15 On the costs of administration, the court approved all of Israel's requested expenses, but it reduced her administration fee from $20,000 to $5,000. Plaintiff appeals.

¶ 16                                        II. ANALYSIS

¶ 17 Plaintiff alleges three overarching errors with respect to the distribution order, which it frames as whether: (1) the court improperly ruled that payment on its seventh-class claim (*i.e*., the note) against the estate "satisfied" its "first priority" mortgage lien against the property; (2) the court improperly failed to pay the lien created by plaintiff's mortgage *before* allowing the sale proceeds to pass to the estate; and (3) Israel improperly paid realtor commissions before satisfying plaintiff's mortgage from the sale proceeds. Plaintiff points out that, when a court orders a sale free and clear of liens under section 20-6(b), it must also "provide for the satisfaction of those liens out of the proceeds of the sale" and "settle and adjust all equities and all questions of priority among all interested persons." 755 ILCS 5/20-6(b) (West 2018). Further, plaintiff notes that, generally, where property left by a decedent is subject to a lien, the property does not become an estate asset until the creditor's lien is discharged. In sum, plaintiff distinguishes between a lien and a note (which it asserts created only a "claim") and contends that the court improperly "skipped" satisfying the lien under section 20-6(b) and went straight to paying claims under section 18-10, in contravention of hundreds of years of law.

¶ 18 In sum, Israel responds that plaintiff's arguments are forfeited and that its status as a non-lienholder/seventh-class claimant under the Probate Act was established when the sale order issued and where plaintiff did not appeal that order. That order, Israel further notes, found that vacating and removing plaintiff's lien was necessary for the proper administration of the estate, and "[t]hat

was the end of [plaintiff's] lien; it did not remain in some ghostlike state, vacated yet still encumbering the proceeds." Thereafter, Israel argues, the court correctly followed the Probate Act's method of distribution based on section 18-10's order of claim preference. Israel argues that the court correctly rejected plaintiff's argument that the sale proceeds should have paid off its lien first, as there was no longer a lien—it had been vacated—and the court correctly rejected the implication that there is some unspecified higher class of priority claimants under section 18-10 for former lienholders.

¶ 19                           A. Jurisdiction and Forfeiture

¶ 20     We address first our jurisdiction. Israel notes that we lack jurisdiction to reverse the court's January 10, 2022, sale order. That order, Israel points out, entered summary judgment in her favor and against plaintiff on its cross-motion for summary judgment on the foreclosure complaint. Further, the sale order vacated and removed plaintiff's mortgage lien. Thus, Israel contends, if plaintiff had wished to challenge the sale order, it should have immediately done so, as "a judgment or order entered in the administration of an estate *** which finally determines a right or status of a party" is appealable without a special finding. Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). The rule, Israel continues, recognizes that estate administration is often lengthy with multiple steps and decisions and that, without an exception allowing for an immediate appeal when the right or status of a party is finally determined, an estate could later require reopening after assets have already been distributed. See *Kelleher v. Hood*, 238 Ill. App. 3d 842, 846-47 (1992) ("[o]ne of the central reasons for making appeals mandatory under Rule 304(b)(1) is to insure the certainty of some issues during lengthy procedures such as estate administration."). According to Israel, the sale order finally determined plaintiff's rights as a non-lienholder. Specifically, the order vacated and removed plaintiff's mortgage lien, and the order was immediately appealable. Because plaintiff

did not timely appeal from that order pursuant to Rule 304(b)(1), Israel contends, we now lack jurisdiction to reverse the sale order.

¶ 21    We agree with Israel that, to the extent the sale order finally fixed plaintiff's rights and status, we lack jurisdiction to address it.  However, much of this is academic, as plaintiff claims that it is *not* appealing the sale order.  Specifically, plaintiff asserts that it is not appealing any aspects of the sale order, nor seeking to undo the sale.[1]  We note, however, that plaintiff also contends that it *could not* have appealed the sale order, because it did not fix finally and absolutely plaintiff's rights or dispose of the entire controversy, as the court still needed to determine the amount of the sale proceeds to which plaintiff was entitled.  Plaintiff disagrees that the sale order "implicitly" ruled plaintiff's mortgage would be satisfied as a seventh-class claim, such that plaintiff could have immediately appealed.

¶ 22    We disagree.  An order need not resolve all matters in the estate to be appealed under Rule 304(b)(1); it must resolve all matters on a particular issue.  See *Malone v. Miller-Hanson*, 396 Ill. App. 3d 910, 915 (2009).  Here, plaintiff's *own arguments* opposing Israel's summary judgment motion and advocating for summary judgment on its behalf recognized that a judgment in Israel's favor would "strip" its mortgage, reduce it to an unsecured creditor in the probate action, and force it to file a seventh-class claim as an unsecured creditor.  Thus, as Israel notes, plaintiff was aware

_____

[1]Indeed, plaintiff labels "blatantly false" Israel's assertion that it is seeking to reverse the sale order and reinstate its mortgage so that it can proceed with a foreclosure, and it states that it "does *not* seek to undo the sale, reinstate the [m]ortgage, or foreclose against the [p]roperty's new owners."  (Emphasis in original.)

that the sale order *finally* determined plaintiff's rights as a non-lienholder, even if it did not explicitly state that plaintiff was a seventh-class claimant.

¶ 23    Moreover, we note that plaintiff did not appeal the denial of summary judgment on its foreclosure complaint. To be sure, ordinarily, the denial of summary judgment is not appealable, because such an order is interlocutory in nature. See, *e.g.*, *Clark v. Children's Memorial Hospital*, 2011 IL 108656, ¶ 119. However, an exception exists where the parties have filed cross-motions for summary judgment and the trial court has granted one and denied the other, disposing of all the issues in the case. *Id.* Here, the parties filed cross-motions for summary judgment, and the court's order finally disposed of the question whether the property would be sold via foreclosure proceedings or pursuant to section 20-6(b) of the Probate Act. In that regard, had plaintiff wished to challenge the court's denial of summary judgment on its foreclosure complaint, it arguably could have raised that issue in an appeal challenging the sale order. In any event, here, where no appeal took place, we agree with Israel that we lack jurisdiction to address the sale order, but since plaintiff is not asking us to address the propriety of the sale order, there is no claim on appeal requiring dismissal for lack of jurisdiction.

¶ 24    Relatedly, Israel also contends that many of plaintiff's appellate arguments were not raised below and, thus, she urges us to find them forfeited. While it is well-settled that issues, theories, or arguments not raised in the trial court may not be raised for the first time on appeal (see, *e.g.*, *In re Estate of Chaney*, 2013 IL App (3d) 120565, ¶ 8), it is also true that the forfeiture rule is a limitation on the parties, not the court, and that we may, in order to provide a just result or maintain a sound and uniform body of precedent, relax forfeiture principles (see, *e.g.*, *Dillon v. Evanston Hospital*, 199 Ill. 2d 483, 505 (2002)). Here, plaintiff argues that its position concerns both a just result and important precedent. Thus, we will address the relevant arguments in turn and, unless

the purported forfeiture impedes our ability to resolve the issue, we will address plaintiff's contentions.

¶ 25                                   B. Distribution Order

¶ 26     We address together plaintiff's arguments that the court improperly ruled that payment on its seventh-class claim (*i.e.*, the note) against the estate satisfied its "first priority" mortgage lien against the property and that the court improperly failed to pay the lien created by plaintiff's mortgage before allowing the sale proceeds to pass to the estate.  In sum, for the following reasons, we reject plaintiff's arguments.

¶ 27     We start with our standard of review.  Plaintiff asserts that our review is *de novo* and, to the extent the issues present questions of statutory interpretation, plaintiff is correct.  See, *e.g.*, *Habdab v. Lake County*, 2023 IL App (2d) 230006, ¶ 23.  However, the decision whether to proceed under section 20-6(b) of the Probate Act, as well as the distribution of certain awards under the Probate Act, are committed to the trial court's sound discretion and will not be disturbed unless arbitrary or unreasonable.  See *In re Estate of LaPlume*, 2014 IL App (2d) 130945, ¶ 49 (section 20-6(b)); *In re Estate of Devoy*, 231 Ill. App. 3d 883, 888 (1992) (noting that, although the Probate Act allows estate-administrator and attorney-fee awards, those fees require court approval and the court's exercise of discretion).

¶ 28     The framework for our review also requires consideration of section 20-6(b) of the Probate Act, which provides that, in a proceeding to sell real estate, the court may "direct the sale or mortgage of the property free of all mortgage, judgment or other liens that are due, provide for the satisfaction of all those liens out of the proceeds of the sale or mortgage and settle and adjust all equities and all questions of priority among all interested persons."  755 ILCS 5/20-6(b) (West 2018).  In *LaPlume*, this court held, in part, that: (1) the trial court has broad discretion to proceed

with a sale under section 20-6(b), instead of allowing a foreclosure, if it finds doing so necessary for proper administration of the decedent's estate; and (2) if the court chooses to apply section 20-6(b) and direct a sale free of a mortgage or other liens, it must apply that section in its entirety and also satisfy those liens from the proceeds of the sale and settle and adjust equities and questions of priority. *LaPlume*, 2014 IL App (2d) 130945, ¶¶ 20-24. Further, we explained the interplay between the Foreclosure Law and the Probate Act, noting that, "in a foreclosure action, the focus is on maximizing the mortgagee's recovery; in the probate action, the focus is on maximizing and properly administering the decedent-mortgagor's estate." *Id.* ¶ 47. We note that *LaPlume* was appealed in part because the trial court had expressed skepticism that, under section 20-6(b) of the Probate Act and, in particular, where there existed a competing foreclosure action, it possessed "almost unlimited power" to extinguish encumbrances on a property and "strip, change, amend, [or] vacate a foreclosure and let the estate sell the property for whatever it can get and [then] divvy up the proceeds" in a *pro rata* fashion. *Id.* ¶¶ 12-13. In short, this court answered those questions in the affirmative, and we remanded for the trial court to exercise its discretion on whether application of section 20-6 was necessary for proper administration of the estate, which remained the "paramount" consideration. *Id.* ¶¶ 56-57.

¶ 29 Also important, and, indeed, considered by the trial court here in its distribution order, is our supreme court's decision in *Funk*, where the court explained several relevant principles. Specifically, the court held that a creditor's security interest in property does *not* entitle it to jump ahead of claims that would otherwise fall within a higher classification under section 18-10 of the Probate Act.[2] *Funk*, 221 Ill. 2d at 90-95. There, the court also explained that older cases (many

---

[2] Section 18-10, in short, provides the order for classification of claims against a decedent's

of which plaintiff relies upon), which stated that property subject to a lien does not become an estate asset until the lien is discharged, did not address the question,

"whether a creditor's security interest in property entitles it to jump ahead of claims for expenses of administration that would otherwise fall within a higher classification under the Probate Act. The distinction is critical. A valid security interest unquestionably gives a creditor preference over unsecured creditors within the same or lower statutory class under the Probate Act. That does not necessarily mean, however, that the secured creditor is entitled to trump those whose claims fall within a higher class. To the contrary, it has been held that the fact that a claim is secured by a lien upon real or personal property gives the claimant no superior rights in the matter of classifying claims." *Id.* at 92.

Further, the court explained that, when the competing superior claims consist of administration expenses, the secured creditor may receive less than it might have otherwise, but those expenses benefit the creditor by preserving the property, facilitating the property's sale, and ensuring the proceeds are properly collected and disbursed. *Id.* at 93. Moreover, the court noted, if the creditor (which was the United States in that case) did not wish to avail itself of those benefits, it could have elected to pursue its secured interest through foreclosure proceedings, but it did not. *Id.* As such, "[h]aving elected to forgo that remedy and permit the estate to manage and dispose of the subject property, the government cannot now contend that its third-class claim should have

estate, with, as relevant here, first-class claims including expenses of administration, third-class claims including debts due the United States (which, here, Israel and the United States increased in priority through negotiations), and, ultimately, seventh-class claims, which include "all other claims." 755 ILCS 5/18-10 (West 2020).

eclipsed the first-class claim for administration expenses ***." *Id.* Finally, the court noted that, "without the lien [which the government had released], the predicate for treating the proceeds as anything other than assets of the estate was gone. Accordingly, while the government's claim remained superior to claims of all other creditors, it was subordinate to the expenses of administration, including attorney fees." *Id.* at 94.

¶ 30    Finally, we acknowledge, as did the trial court, that the legal term "satisfaction" means something other than full performance. Plaintiff asserts that section 20-6(b) provides that the court, after allowing the sale, must also "settle and adjust all equities and all questions of priority," which, according to plaintiff, is a term of art meaning "account for, determine the validity of, and fix the amount due." We disagree that, even if true, this impacts our decision. Again, section 20-6(b) essentially has three components, providing the court may: (1) direct the sale free of all mortgages or other liens; (2) provide for the "satisfaction" of those liens out of the proceeds of the sale; and (3) "settle and adjust all equities and all questions of priority among all interested persons." 755 ILCS 5/20-6(b) (West 2020). Plaintiff's argument pertains to the third component, but the section first directs the court to "satisfy" existing encumbrances from the sale proceeds. The definition of "satisfaction" is,

> "[t]he giving of something with the intention, express or implied, that it is to extinguish some existing legal or moral obligation. Satisfaction differs from performance because it is always something given as a substitute for or equivalent of something else, while performance is the identical thing promised to be done." *Satisfaction*, Black's Law Dictionary (11th ed. 2019).

¶ 31    Collectively, therefore, the Probate Act gives the court authority to extinguish encumbrances and, upon doing so, it must satisfy those encumbrances and adjust the priorities of

the holders of those now-extinguished encumbrances. However, the existence of a former lien does not give the former lienholder superior rights in claim classification. Although the court maintains discretion throughout the proceedings to balance equities and prorate the funds in a fair manner, it does so pursuant to the order of claim classification directed by section 18-10 of the Probate Act. Here, therefore, (1) the court maintained broad discretion to allow the sale under section 20-6(b) under the Probate Act instead of the Foreclosure Law; (2) the sale order, which plaintiff did not appeal and, thus, remains in effect, removed plaintiff's lien; and (3) consequently, because "satisfaction" of the removed lien does not require full performance, plaintiff's "satisfaction" is that it receives *something* from the proceeds of the sale, but the order of distribution, as directed by section 18-10, rendered plaintiff's claim a seventh-class claim. Plaintiff's attempt to create a category *requiring* it to be paid *before* even the first-class claimants under the Probate Act fails, as *Funk* states that no such category exists. *Funk*, 221 Ill. 2d at 90-95. We note that, while the creditor in *Funk* did not pursue foreclosure and plaintiff here did, again, plaintiff's pursuit of that action *failed* when the court denied its motion for summary judgment on the foreclosure complaint and issued the sale order, yet it did not challenge or appeal that order. Thus, although plaintiff urges us to understand the difference between the mortgage lien and the note claim, the lien no longer existed.

¶ 32    Moreover, if plaintiff had been paid first after the sale, there would have been nothing left for the other lienholders (*e.g.*, United States, which, even despite its agreement with Israel, would have had a third-class and, thus, higher claim than plaintiff's) or to pay for the estate administration costs, etc. The court, in its discretion, reasonably determined that payment first to plaintiff was neither required nor equitable, given that the focus in a probate action is not maximizing the mortagee's recovery, as would be the case in a foreclosure action, but, rather, to maximize and

properly administer the estate as a whole. *LaPlume*, 2014 IL App (2d) 130945, ¶¶ 20-47. Indeed, once the property was sold and the estate consisted merely of cash from the sale, section 18-13 of the Probate Act provides that the estate administrator "shall" pay claims "in the order of their classification, and when the estate is insufficient to pay the claims in any one class, the claims in that class shall be paid *pro rata*." 755 ILCS 5/18-13 (West 2020). Thus, the court here did not abuse its discretion or otherwise err in granting Israel's motion.

¶ 33    Plaintiff cites several cases in support of its proposition that, where a property is subject to a lien, the property does not become an asset of the decedent's estate until the lien is discharged. However, this general concept is not in dispute. Indeed, the trial court recognized this principle, as did the court in *Funk*. Yet, and unlike the facts presented in the cases upon which plaintiff relies, the lien here *was* discharged and, in fact, was vacated and removed *before* the proceeds from the property's sale became an estate asset. As such, plaintiff's cases are not particularly helpful to our analysis. See, *e.g.*, *Furness v. Union National Bank*, 147 Ill. 570 (1893); *King v. Goodwin*, 130 Ill. 102 (1889); *In re Estate of Philp*, 114 Ill. App. 3d 107, 111 (1983); *In re Estate of Yealick*, 69 Ill. App. 3d 353, 355 (1979). Similarly, plaintiff argues that the lien must be paid before distributing sale proceeds to other section 18-10 claimants, *unless* the secured creditor agrees to the sale or otherwise makes no effort to enforce its lien interest. See, *e.g.*, *Lillard v. Noble*, 159 Ill. 311, 320-21 (1896); *Dodge v. Mack*, 22 Ill. 93, 95-98 (1859). Plaintiff asserts it opposed the sale and tried to enforce its lien through foreclosure, thus, its lien must still be paid before distributing sale proceeds to other claimants. However, plaintiff's opposition to the sale and its attempt to enforce its lien interest through foreclosure were both *rejected* by the trial court in the January 2022 sale order, its lien was *removed*, and it did not appeal that decision. Thus, the

lien was *extinguished* and the proceeds passed to the estate for distribution pursuant to the Probate Act's provisions.

¶ 34    Plaintiff also raises several hypotheticals and policy-related arguments, such as: (1) this case reflects an improper use of probate administration as a means to benefit the administrator and other creditors at plaintiff's expense; (2) that the decision creates incentives for homeowners to acquire mortgages and act irresponsibly because the decision has created a form of probate insurance; and (3) that the effect of the court's decision is an unconstitutional taking because the decedent's mortgage was a contract and the court took plaintiff's property (the mortgage) and gave it to Israel (a private person) to pay the estate's debts (a private purpose).  Preliminarily, plaintiff's first argument could apply virtually any time a court orders a sale free of liens and mortgages under section 20-6(b), as one reason a court is likely to allow such as sale is because there exist insufficient funds to properly administer the estate and fully satisfy the mortgage and, thus, the efforts of the administrator are rewarded at the expense of a creditor.  Nevertheless, the statute allows the court to apply that section in its discretion.  Further, we think plaintiff's second concern about probate-insurance is somewhat exaggerated; indeed, as Israel points out, the facts before us are relatively narrow, requiring a scenario where: (1) the homeowner must first die intestate; (2) the liens exceed the value of the estate; and (3) the trial court grants a petition for sale under 20-6 and removes the liens.  Finally, we disagree that there is an unconstitutional taking where some *degree* of "taking" could be alleged any time section 20-6(b) is employed and a secured creditor receives less than the full amount owed; yet, the statute permits the court to order a sale free of mortgages and liens if necessary for proper administration of the estate.  In short, and as plaintiff acknowledges, policy arguments are best raised with the legislature (see, *e.g.*, *People v. Sanders*, 99 Ill. 2d 262, 271 (1983) (the primary function of courts is not to "promote policies aimed at

broader social goals more distantly related to the judiciary. This is primarily the responsibility of the legislature.")), which, we note, presumably has acquiesced in our rationale and holding concerning the court's broad discretion as expressed in *LaPlume*, which was decided almost 10 years ago (see, *e.g.*, *Ready v. United Goedecke Services, Inc.*, 232 Ill. 2d 369, 380 (2008)).

¶ 35                               C. Real Estate Commissions

¶ 36    Plaintiff also asserts that the court's order improperly granted Israel's petition regarding the payment of realtor commissions. Specifically, plaintiff asserts that Israel improperly paid realtor commissions before satisfying plaintiff's mortgage from the proceeds of the sale, again asserting that the sale of secured collateral may not be used to pay realtor commissions until the secured creditor's lien is discharged. We have rejected above the premise of this argument, as plaintiff's lien was discharged. As no further argument is developed, plaintiff's objections to the real estate commissions are rejected.

¶ 37                               III. CONCLUSION

¶ 38    For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

¶ 39    Affirmed.