FIRST DIVISION
March 28, 2011

No. 1-09-0639

ESTATE OF ROSEMARY OGLESBY, ) Appeal from the
Deceased, GEORGE OGLESBY and) Circuit Court of
GEORGE OGLESBY, as Father ) Cook County.
and next Friend of GEORGE )
OGLESBY II, a Minor, ) No. 02 L 8377
)
    Plaintiffs-Appellees, )
)
    v. )
) Honorable
WILLIAM BERG and THE CHICAGO) Vanessa Hopkins,
PARK DISTRICT, ) Judge Presiding.
)
    Defendants-Appellants.)

    PRESIDING JUSTICE Hall delivered the judgment of the court, with opinion.

    Justices Hoffman and Rochford concurred in the judgment and opinion of the court.

## OPINION

    The defendants, William Berg and the Chicago Park District, appeal from a judgment entered on a jury verdict awarding damages to the plaintiffs, the estate of Rosemary Oglesby, George Oglesby and George Oglesby II, a minor. The plaintiffs were injured in a collision between a park district van, driven by Mr. Berg, and a Chevy Impala, driven by Mrs. Oglesby. Her son, George Oglesby (Mr. Oglesby) and grandson, George II, were passengers in the Impala.

    On appeal, the defendants raise the following issues: whether the trial court's denial of their request for an exhibit to go to the jury room requires a new trial on damages, and

No. 1-09-0639

whether the trial court should have granted a remittitur of the damages awarded to the estate for Mrs. Oglesby's pain and suffering and loss of a normal life.  As this appeal concerns only the damages suffered by Mrs. Oglesby, we will concentrate our discussion on the evidence pertaining to her injuries and the results therefrom.

BACKGROUND

The accident occurred on September 23, 1998, at the intersection of Marquette Avenue and Lake Shore Drive.[1]  At the time of the accident, Mrs. Oglesby was 60 years old and suffered from cancer.  In 2000, Mrs. Oglesby died from complications due to cancer, and her estate was substituted as a party.  Trial of the personal injury suit took place on September 23, 2008.

Mr. Oglesby testified that the impact of the collision was severe; the park district's van flipped over and the Impala was destroyed.  Mrs. Oglesby's face hit the windshield. The plaintiffs were taken by ambulance to Jackson Park Hospital for treatment.  While not specifically stated in the record, it appears the plaintiffs were released from the hospital the same day as the accident.  When Mrs. Oglesby left the hospital, her head was bandaged.

Mr. Oglesby testified that Mrs. Oglesby was seen by Dr.

[1]The original complaint was filed in 1999.  It was voluntarily dismissed and refiled in 2002.

2

No. 1-09-0639

Silverman and Dr. Volkening. Following the accident, Mr. Oglesby moved in with Mrs. Oglesby to care for her, as she was no longer able to maintain her residence on her own. Mrs. Oglesby was in pain from the accident and required medication. On cross-examination, Mr. Oglesby testified that Mrs. Oglesby was taking medication prior to the accident.

Several exhibits were admitted into evidence during Mr. Oglesby's testimony. The plaintiffs' exhibit No. 10 was a billing statement from Dr. Silverman, dated October 12, 1999. According to the statement, Mrs. Oglesby was initially seen by Dr. Silverman on September 25, 1998, two days after the accident. She had 12 brief office visits between September 26 and October 27, 1998. During that time, she was treated with hot packs and joint mobilization. The total charges were $1,410.

Dr. Silverman testified via his evidence deposition.[2] Testifying from his medical notes, he related that he conducted an examination of Mrs. Oglesby and then had her tested by Dr. Volkening, a chiropractic doctor. Based on his own examination and Dr. Volkening's test results, Dr. Silverman diagnosed Mrs. Oglesby as suffering from muscle spasms in the her neck and back

---

[2]The plaintiffs do not refer this court to the record cite where Dr. Silverman's evidence deposition was admitted into evidence. However, both parties treat Dr. Silverman's testimony as part of the evidence considered by the jury.

3

No. 1-09-0639

areas. She had also sustained acute contusions to her knees and left hand, as well as an abrasion on that hand. While Mrs. Oglesby suffered trauma to the left side of her head, the result from the neurological test was within the normal range. She sustained secondary limitation of forward and backward motion in her neck area, which intensified with activity. She was also suffering pain as a result of these conditions.

Dr. Silverman noted that Mrs. Oglesby had received an injection for pain at the hospital and also received prescriptions for Motrin and Flexeril. Dr. Silverman prescribed rest and avoidance of strenuous activity, a course of physical therapy and sitz baths. She was to sleep on a firm surface and wear a Stryker collar, a soft neck collar to immobilize her neck.

Dr. Silverman testified that he continued to see Mrs. Oglesby periodically. According to his medical notes, he last saw her on October 8, 1999. At that time, Mrs. Oglesby had no complaints relating to the accident. The doctor released her with instructions to come back as needed. He acknowledged that Dr. Volkening had performed a second test on Mrs. Oglesby on October 27, 1998; the test results indicated significant improvement in her range of motion and muscle strength.

In closing argument, the plaintiffs' attorney requested an award of $75,000 for loss of a normal life and $85,000 for Mrs. Oglesby's pain and suffering, arguing as follows:

"During the period of time after September 23rd, 1998 until

4

October of 1999, Rosemary continued to be under the care of Dr. Silverman. She was not effectively released from further care until October of 1999, a year after the accident."

In response, the defendants' attorney argued as follows:

"I would also ask you to look at the bills from the Silverman Foreman Medical Associates for Rosemary Oglesby, and you will note that her initial exam was on September 25th, 1998 and her last treatment was on 22, October of 1998. So we are talking here essentially about one month, *** a little over a - - around a month's treatment. And what did the treatment consist of? Sitz bath, that's a fancy word for she stepped in the hot tub. Compare the claim of injury to the actual office visits. Inferential hot packs, I have got a heating pad at home. Joint mobilization, the last of which was through October of 1998. That's near the accident."

The jury returned a verdict in favor of Mrs. Oglesby's estate. In addition to amounts for medical expenses and property damage, the jury determined the damages for her pain and suffering to be $42,000 and her damages for loss of a normal life to be $34,000, The jury further found Mrs. Oglesby 40% negligent and awarded her estate a total of $47,200.20.

The trial court denied the defendants' posttrial motion. This appeal followed.

No. 1-09-0639

ANALYSIS

I. New Trial

The defendants contend that they are entitled to a new trial because the trial court erred when it denied the defendants' request to send exhibit No. 10 to the jury room.

After the jury retired to deliberate, the trial court asked the parties' attorneys which exhibits they wished to go to the jury room. The defendants' attorney requested that exhibit No. 10 be sent to the jury. After the court pointed out that No. 10 was the plaintiffs' exhibit, the defendants' attorney argued to the court as follows:

"MR. BROWN: I respectfully submit if they are all in evidence, which ever party submits the evidence, they should be allowed to go back to the jury.

THE COURT: Yes, if [the plaintiffs' attorney] chooses to send them back to the jury.

* * *

THE COURT: If counsel wants to send in his exhibit, he can. If he chooses not to, that's noted. If the jurors request it, then it will go in."

A. *Standard of Review*

Our courts have held that the decision to send exhibits to the jury room is within the discretion of the trial court, and we will not reverse that decision absent an abuse of discretion that prejudices a party. *Gallina v. Watson*, 354 Ill. App. 3d 515,

6

No. 1-09-0639

522, 821 N.E.2d 326 (2004).

## B. *Discussion*

Section 2-1107(d) of the Code of Civil Procedure (the Code) provides that "[p]apers read or received in evidence, other than depositions, may be taken by the jury to the jury room for use during the jury's deliberations." 735 ILCS 5/2-1107(d) (West 2008). The trial court has the discretion to permit all admitted evidence relevant to any material fact to go to the jury room. *Bieles v. Ables*, 234 Ill. App. 3d 269, 272, 559 N.E.2d 469 (1992). Nothing in section 2-1107(d) requires a court to deny a party's request to send an exhibit to the jury room solely on the basis that the exhibit was placed in evidence by the opposing party. Exhibit No. 10 met the statutory criteria in that it was not a deposition and had been admitted into evidence. In addition, it was also relevant to the issue of Mrs. Oglesby's pain and suffering resulting from the accident.

In the quoted exchange between the defendants' attorney and the trial court, the court refused to order exhibit No. 10 be taken to the jury room because the request was not made by the party offering the exhibit or pursuant to a request by the jury. The court's statements indicate that it felt it had no choice but to deny the request. Therefore, the court's ruling was not an abuse of discretion but a failure to exercise its discretion. A trial court's refusal to exercise its discretion due to its belief it has none is error. *Allstate Insurance Co. v. Rizzi*,

7

No. 1-09-0639

252 Ill. App. 3d 133, 137, 625 N.E.2d 74 (1993). "Whether the error requires reversal depends upon the circumstances presented by each case." *Allstate Insurance Co.*, 252 Ill. App. 3d at 137; see also *In re Mark P.*, 402 Ill. App. 3d 173, 178, 932 N.E.2d 481 (2010) (error in failing to exercise discretion may be harmless).

The defendants maintain that the jury's determination that $42,000 represented Mrs. Oglesby's damages for pain and suffering was based on Dr. Silverman's testimony that Mrs. Oglesby remained under his care for a year after the accident. The defendants argue that it was essential that exhibit 10 be sent to the jury room because it established that Mrs. Oglesby's treatment lasted only a month. Thus, the denial of their request to have exhibit No. 10 sent to the jury room was prejudicial and required a new trial.

Having reviewed the evidence relevant to the award of damages to Mrs. Oglesby for pain and suffering, we determine that reversal is not required in this case. Dr. Silverman testified from his medical notes that, following her last treatment on October 27, 1998, he continued to see Mrs. Oglesby periodically and that he last saw her on October 8, 1999. At that visit, she reported having no further complaints attributable to the accident and was released from his care. Although exhibit No. 10 did not list any office visits after October 1998, the defendants' attorney never questioned Dr. Silverman as to the inconsistency between his medical notes and his billing

8

No. 1-09-0639

statement.

Moreover, in closing argument, the defendants' attorney pointed out that Mr. Oglesby's treatment had lasted a month and in reality consisted of using a heating pad and sitting in warm water. He asked the jury to compare the injury claim to the actual office visits, thus drawing the jury's attention to the fact that Mrs. Oglesby's last treatment was in October 1998. The defendants' closing argument contemplated that the jury would actually be able to view exhibit No. 10 during deliberations, the jury did not request to view exhibit No. 10.

The defendants rely on *Gallina*. In *Gallina*, the appellate court held that the trial court abused its discretion when it refused to allow an exhibit containing a doctor's written opinion disclosures to be taken to the jury room, as the exhibit would have assisted the jury in assessing the doctor's testimony. The reviewing court rejected the argument that sending the exhibit to the jury would have overemphasized that particular piece of evidence. Since all the other exhibits had been sent to the jury room, the court determined that not sending the exhibit to the jury room diminished the evidence contained in the exhibit. *Gallina*, 354 Ill. App. 3d at 522.

The plaintiffs state that, unlike *Gallina*, not all of the other exhibits were sent to the jury room. While the record is unclear on this point, we note that the defendants do not challenge the accuracy of the plaintiffs' statement. Therefore,

9

No. 1-09-0639

*Gallina* is not persuasive. Moreover, exhibit No. 10 was an uncomplicated billing statement. The billing statement was evidence of the dates of Mrs. Oglesby's office visits and treatment dates. The significance of those dates was pointed out to the jury and strenuously argued to the jury by the defendants' attorney. The fact that the jury determined the damages for Mrs. Oglesby's pain and suffering to be $42,000, rather than the $85,000 requested by the plaintiffs, strongly suggests that the jury did not ignore the defendants' evidence on this issue.

The defendants also assert that a comparison of the damages awarded to Mrs. Oglesby with the smaller damages awards to Mr. Oglesby and George II was sufficient to show that the defendants were prejudiced by the failure to send exhibit No. 10 to the jury room. We disagree. The jury heard the evidence as to the injuries suffered by each plaintiff, the required treatment and any residual effects resulting from the accident. In closing argument, the plaintiffs' attorney reiterated the amount of damages sought for each of the plaintiffs. In making the determination as to damages suffered by all three plaintiffs, the jury did not lack any information that viewing exhibit No. 10 would have provided.

We conclude that the trial court erred when it failed to exercise its discretion in denying the defendants' request to have exhibit No. 10 sent to the jury room. While this was error, the defendants have failed to establish that they were

10

No. 1-09-0639

sufficiently prejudiced by the trial court's error to require a new trial on the damages awarded to Mrs. Oglesby's estate.

## II. Remittitur

In closing argument, the plaintiffs' attorney requested that the jury award $85,000 for Mrs. Oglesby's pain and suffering and $75,000 for her loss of a normal life. Prior to applying the 40% reduction due to Mrs. Oglesby's negligence, the jury found the damages for her pain and suffering to be $42,000 and her damages for loss of a normal life to be $34,000.

The defendants contend that the evidence did not support the jury's determination of damages. They request that this court order a remittitur of 50% of the damages for pain and suffering and for loss of a normal life.

### A. *Standard of Review*

We review the ruling on a motion for a remittitur under the abuse of discretion standard. *Diaz v. Legat Architects, Inc.*, 397 Ill. App. 3d 13, 45, 920 N.E.2d 582 (2009). We will find an abuse of discretion only if the trial court's ruling was arbitrary, ignored recognized principles of law or if no reasonable person would take the position adopted by the trial court. *Schmitz v. Binette*, 368 Ill. App. 3d 447, 452, 857 N.E.2d 846 (2006). " 'In determining whether there has been an abuse of discretion, we may not substitute our judgment for that of the trial court, or even determine whether the trial court exercised its discretion wisely.' " *Clarke v. Medley Moving & Storage,*

11

No. 1-09-0639

*Inc*, 381 Ill. App. 3d 82, 95, 885 N.E.2d 396 (2008) (quoting *Simmons v. Garces*, 198 Ill. 2d 541, 568, 763 N.E.2d 720 (2002)).

B. *Discussion*

The purpose of a remittitur is to correct an excessive jury verdict in limited and appropriate circumstances. *Clarke*, 381 Ill. App. 3d at 96. The trier of fact determines the amount of damages and, as a reviewing court, we give great deference to a jury's award of damages. *Clarke*, 381 Ill. App. 3d at 96. " 'A verdict will not be set aside by a court unless it is so excessive that it indicates that the jury was moved by passion or prejudice or unless it exceeds the necessarily flexible limits of fair and reasonable compensation or is so large that it shocks the judicial conscience.' " *Diaz*, 397 Ill. App. 3d at 47 (quoting *Kindernay v. Hillsboro Area Hospital*, 366 Ill. App. 3d 559, 572, 851 N.E.2d 866 (2006)). Where the jury's verdict falls within the flexible range of conclusions reasonably supported by the evidence, a remittitur should not be granted. *Diaz*, 397 Ill. App. 3d at 47. In reviewing an award of compensatory damages for a nonfatal injury, we may consider, among other things, the permanency of the condition, the possibility of future deterioration, the extent of the medical expenses and restrictions imposed as a result of the injury. *Richardson v. Chapman,* 175 Ill. 2d 98, 113-14, 676 N.E.2d 621 (1997).

In seeking a 50% remittitur, the defendants rely on *Richardson*. As the result of a car/truck collision, plaintiff

12

Ann McGregor sustained a laceration on her forehead; she was treated and released from the hospital the same day. The laceration healed with only a slight scar. She also suffered from nightmares from the accident. The jury awarded her $100,000 for pain and suffering. As Ms. McGregor's injury was not serious, the supreme court determined that an award of $50,000 for pain and suffering was more appropriate. *Richardson*, 175 Ill. 2d at 115.

As Mrs. Oglesby was deceased at the time of trial, the evidence of her pain and suffering and loss of a normal life was presented through the testimony of Dr. Silverman and Mr. Oglesby. Through Dr. Silverman's testimony, the jury learned that, as a result of the accident, Mrs. Oglesby sustained neck and back injuries, which required treatment. She also had been prescribed medication for her pain. Although her treatments ceased in October 1998, she continued to see Dr. Silverman, periodically, until October 1999. Through Mr. Oglesby's testimony, the jury learned that, prior to the accident, Mrs. Oglesby lived and maintained her residence on her own. After the accident, Mr. Oglesby moved in with her to care for her as she was no longer able to perform household tasks. According to Mr. Oglesby, she suffered pain due to the accident and required pain medication frequently.

*Richardson* does not support the defendants' request for a remittitur of 50% of the damage awards for pain and suffering and

13

loss of a normal life. Mrs. Oglesby's injuries sustained in the accident and the resulting pain and suffering were far more serious than those of Ms. McGregor in *Richardson.*

As this court has previously observed, a damage award is not subject to scientific computation. *Velarde v. Illinois Central R.R. Co.*, 354 Ill. App. 3d 523, 540, 820 N.E.2d 37 (2004). Mr. Oglesby's testimony, while not extensive, as well as that of Dr. Silverman, supported an award of damages for Mrs. Oglesby's loss of a normal life, as well as for her pain and suffering. Finally, while the plaintiffs requested a total of $160,000 in damages for Mrs. Oglesby's pain and suffering and loss of a normal life, the jury set those damages at $76,000, less than half the amount the plaintiffs had requested. That amount was then subject to a 40% reduction for Mrs. Oglesby's negligence.

We conclude that the evidence supported the jury's award of damages to the estate for Mrs. Oglesby's pain and suffering and loss of a normal life. The trial court did not abuse its discretion in refusing to grant the defendants a remittitur. Accordingly, we reject the defendants' request for a 50% remittitur.

CONCLUSION

The judgment of the circuit court is affirmed.

Affirmed.

14