# Illinois Official Reports

## Appellate Court

*In re Estate of LaPlume*, 2014 IL App (2d) 130945

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE of ERIKA ANNA LaPLUME, Deceased (Andrea McIntyre, as Independent Executor of the Estate of Erika Anna LaPlume, Petitioner and Defendant and Counterplaintiff-Appellant, v. Bank of America, N.A., Respondent and Plaintiff and Counterdefendant-Appellee (Diamond Quest Realty, Inc., Respondent; Citibank (South Dakota) N.A., Capital One Bank (USA) N.A., and Citibank N.A., s/b/m to Citibank (South Dakota) N.A., Respondents and Defendants; Unknown Heirs and Legatees of Erika A. LaPlume, Unknown Owners and Nonrecord Claimants, and Julie Fox, as Special Representative of the Estate of Erika A. LaPlume, Deceased, Defendants)). |
| District & No. | Second District<br>Docket No. 2-13-0945 |
| Filed | December 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings involving the administration of decedent's estate, which basically consisted of a residence encumbered by liens and mortgages totaling over $207,000, including a primary mortgage of $165,000, and the executor claimed she could sell the residence for $200,000, the probate court erred by refusing to exercise its discretion under section 20-6 of the Probate Act by which a short sale could be ordered, the encumbrances could be extinguished and the proceeds could be divided *pro rata* or by allowing the matter to proceed under a foreclosure action instituted by the holder of the $165,000 mortgage, where those with mortgage liens and other secured interests in the property would be allowed to seek recoveries, and given the court's failure to exercise its discretion, the judgment dismissing the executor's petitions to sell the property under the Act and granting her motion to dismiss the mortgagee's counterclaim to foreclose was reversed and the cause was remanded to allow the probate court to exercise its discretion under section 20-6 of the Act. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Lake County, Nos. 12-P-492, 12-CH-4669; the Hon. Nancy S. Waites, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Fredric B. Lesser and Jeffrey P. O'Kelley, both of Lesser, Lutrey & McGlynn, LLP, of Lake Forest, for appellant. |
| | Alan S. Kaufman and Keith Levy, both of Manley Deas Kochalski LLC, of Chicago, for appellee. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Justices Zenoff and Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1   Andrea McIntyre, the executor of the estate of decedent, Erika Anna LaPlume, challenges the judgment of the circuit court of Lake County dismissing her first and second petitions for approval to sell the subject property and granting Bank of America's motion to dismiss her counterclaim to the bank's complaint to foreclose the mortgage on the subject property. The executor contends that section 20-6 of the Illinois Probate Act of 1975 (Probate Act) (755 ILCS 5/20-6 (West 2012)) trumps the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1401.1(b), (c), 15-1107 (West 2012)) so that the probate court should have allowed the executor's counterclaim and approved the sale of the subject property free and clear of any remaining liens and mortgages. Because we determine that the probate court did not exercise its discretion under section 20-6 of the Probate Act, we reverse and remand.

¶ 2                               I. BACKGROUND
¶ 3   The pertinent facts of record reveal that, on March 26, 2012, the decedent passed away, survived only by her daughter, the executor. The executor is also the "sole surviving heir and legatee" under the decedent's will. On June 25, 2012, the executor was formally appointed by the probate court to serve as executor of the decedent's estate. The subject property, the decedent's residence on Pheasant Ridge Drive in Lake Zurich, was the only asset of the

estate. The subject property was encumbered by liens and mortgages totaling more than $207,000. Of this amount, the bank's lien totaled about $165,000.

¶ 4     On December 18, 2012, the bank filed a complaint for foreclosure against the subject property. The foreclosure action was filed separately from the probate of the decedent's estate.

¶ 5     On March 12, 2013, the executor filed her first petition for approval to sell the subject property. The executor represented that she had found a buyer for the subject property and that the sale price for that transaction was $200,000. In the petition, the executor named the bank along with all other known lienholders. The executor argued that section 20-6(b) of the Probate Act (755 ILCS 5/20-6(b) (West 2012)) permitted the probate court to order the short sale of the subject property and prorate the various encumbrances so that the property would be sold free and clear of all mortgages, liens, and encumbrances. The bank filed no response to the petition.

¶ 6     On April 17, 2013, the matter was consolidated in the probate court. In consolidating the actions, the probate court agreed with the executor that a judgment in the foreclosure proceeding could potentially conflict with the relief she was seeking in her petition for approval of the sale of the subject property. About two weeks later, the bank filed several motions, including a motion for an order of default in the now-consolidated foreclosure proceeding, a motion for the entry of a judgment of foreclosure and sale, and a motion to appoint an officer to conduct the sale. On May 28, 2013, the executor filed an answer to the bank's amended foreclosure complaint and a counterclaim. In the counterclaim, the executor restated her position that section 20-6(b) allowed the probate court to order a short sale, and she repeated the allegations of the petition for approval.

¶ 7     The bank did not file an answer to the counterclaim. Instead, on June 13, 2013, the bank filed a motion to dismiss the executor's counterclaim, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)). The parties proceeded to brief the matter, setting an August 29, 2013, hearing date for the motion and the petition for approval.

¶ 8     While the parties were briefing the matter, the executor managed to find a buyer who would purchase the subject property for $205,000. The purchase price was still less than the total amount of the encumbrances, so the executor would still be unable to sell the property free and clear unless the probate court employed section 20-6 of the Probate Act. On August 23, 2013, the executor filed a second petition for approval to sell the subject property, based on the August 15, 2013, contract to purchase the property for $205,000. The second petition advanced the same arguments, under section 20-6(b) of the Probate Act, raised in the first petition and the counterclaim. The bank did not file a response to the second petition.

¶ 9     On August 29, 2013, the probate court held a hearing on the executor's first and second petitions for approval and on the bank's motion to dismiss the executor's counterclaim. All interested parties had been given proper notice of the hearing, but only the executor and the bank appeared; another lienholder and the estate's special representative in the foreclosure proceeding (both of whom are not parties to this appeal) did not attend.

¶ 10    The probate court related, on the record, that it and the parties held an *in camera* discussion during which they expressed and explored their positions, but no verbatim record was maintained of the *in camera* discussion. The probate court further explained that, during the *in camera* discussion, it had been able to "pre-try [the] matter and discuss it [with the

parties].” The court summarized the *in camera* discussion for the record, noting that its main inquiry:

> “[E]ssentially [was] how does the Court get around the fact that existing statutory law in the [Foreclosure Law] and all the case law that [the probate court had] seen that basically says that the Court cannot invalidate, change, vacate, strike, ignore a mortgage and allow the Estate to sell the [subject property] free and clear of any liens and then basically net out the money in a percentage-base to all the lienholders[?]”

¶ 11 The court inquired about the specifics of the proposed sale of the subject property versus the various encumbrances, and the parties informed the court that the proposed sale price was $205,000, the bank held a mortgage of approximately $165,000, the total amount of the encumbrances was about $207,500, and that total did not include the 2012 and 2013 real estate taxes or interest for any of the judgment liens against the subject property. The probate court observed that the $207,500 figure also did not include any commission, real estate charges, attorney fees, or the like connected to the sale of the subject property and the administration of the estate.

¶ 12 In summarizing the *in camera* discussion, counsel for the executor stated that he disagreed with the probate court’s *in camera* ruling but understood the court’s position, because the executor had been unable to provide the court with any case law to support her position that the court was empowered by section 20-6(b) of the Probate Act to order a short sale extinguishing the encumbrances on the subject property and divide the resulting funds in a *pro rata* fashion. By contrast, counsel for the bank agreed with the probate court’s ruling, asserting that the foreclosure action should be allowed to proceed and that, if it did, all pending matters would be resolved.

¶ 13 The probate court then orally held:

> “Today the Court is going to make the following ruling. That the original motion for the sale of the property [(the first petition for approval)], the amended motion for the sale of the property with an amended contract offering $205,000 as a purchase price [(the second petition for approval),] and the [executor’s] counterclaim are going to be denied. I’m sorry. The original petition and the amended petition will be denied and dismissed. The counterclaim will be dismissed.
>
> I’m going to make that a final and [appealable] Order. I think it’s time we sort out, at least what I find, inconsistency between the [Foreclosure Law] and the cited portion of the [P]robate [A]ct that seems to give me almost unlimited power in this situation when read with the paragraphs preceding it. The foreclosure at this time is being ordered to be held on hold over the objection of the bank. The Court has told the bank that if they want to file a petition to move [the foreclosure proceeding] from my probate court and back into chancery, they can do that. I’m not giving any time limit. They need some time to decide whether or not that would be a proficuous idea. And today I’ll need an Order to that effect.
>
> And I’m hoping that we will find out whether or not in a probate situation a judge can strip, change, amend, vacate a foreclosure and let the estate sell the property for whatever it can get and divvy up the proceeds. So[,] thank you, gentlemen, very much. Thank you for your research and I will see–perhaps I’ll see Mr. Shaw when he decides to move it into foreclosure, but right now it’s on hold.”

¶ 14    After the hearing, the parties submitted a written order conforming to the probate court's oral pronouncement. The order asserted that it was immediately appealable under Illinois Supreme Court Rule 304(b)(1) (eff. Feb. 26, 2010), and, in the alternative, it also included language pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), purporting to make it immediately appealable. The executor timely appeals.

¶ 15                              II. ANALYSIS

¶ 16    On appeal, the executor argues that the probate court erred in refusing to compel the sale of the subject property under the Probate Act and in allowing the bank to proceed in its foreclosure action. The executor reasons first that section 20-6(b) of the Probate Act (755 ILCS 5/20-6(b) (West 2012)) empowers the probate court to direct the sale of the subject property. The executor next concludes that there is no conflict between section 20-6(b) and the Foreclosure Law and that, even if there is, the Probate Act controls here. From these propositions, the executor concludes that the probate court erred in refusing to compel the sale of the property under section 20-6(b). As a result, the executor requests that we reverse the court's dismissal of the petitions and the counterclaim and that we remand the cause for further proceedings under section 20-6. We begin with a review of the pertinent statutory language.

¶ 17              A. The Language of Section 20-6 of the Probate Act

¶ 18    Initially, the executor asks that we review and construe the language of section 20-6(b) to determine the powers of the probate court under that provision. An issue of statutory interpretation presents an issue of law and is reviewed *de novo*. *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL 114811, ¶ 15.

¶ 19    Section 20-6 of the Probate Act states, pertinently:

"In any proceeding to sell or mortgage real estate the court may:
                                    ***

        (b) direct the sale or mortgage of the property free of all mortgage, judgment or other liens that are due, provide for the satisfaction of all those liens out of the proceeds of the sale or mortgage and settle and adjust all equities and all questions of priority among all interested persons;

        (c) with the assent of the owner of a mortgage lien that is not due, direct that the property be sold or mortgaged free of the lien and provide for the satisfaction of the lien out of the proceeds of the sale or mortgage[.]" 755 ILCS 5/20-6(b), (c) (West 2012).

There is little in the way of authority interpreting section 20-6 of the Probate Act. When interpreting a statute, the cardinal rule is to ascertain and give effect to the intent of the legislature. *National City Mortgage v. Bergman*, 405 Ill. App. 3d 102, 109 (2010). The language of the statute is the best indication of the legislature's intent. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). The statute's language must be given its plain and ordinary meaning, and we are not free to construe a statute in a manner that changes that meaning. *Id.* If the statutory language is clear and unambiguous, we must give effect to that plain and ordinary meaning without resorting to other canons or aids of statutory interpretation. *Id.*

¶ 20    Section 20-6 begins with the phrase: "In any proceeding to sell or mortgage real estate the court may: ***." 755 ILCS 5/20-6 (West 2012). This phrase contains two items worthy of note: first, by its own unambiguous terms, it applies to "any proceeding to sell *** real estate." This raises the question, what constitutes a probate proceeding to sell real estate? The second noteworthy item is the phrase, "the court may." The use of "may" in a statute, except in extraordinary circumstances affecting the public interest (and not present here), indicates the legislature's choice to make the statute permissive instead of mandatory. *Canel v. Topinka*, 212 Ill. 2d 311, 326 (2004). Here, the use of "may" confers discretion upon the probate court. The question associated with this phrase is how to measure the probate court's exercise of discretion. The answers to both questions are given in a preceding section of the Probate Act.

¶ 21    Section 20-4(a) provides, pertinently, "By leave of court and upon such terms as the court directs, a representative of a decedent's estate may sell *** any real estate or interest therein to which the decedent had claim or title, *** when it is necessary for the proper administration of the decedent's estate." 755 ILCS 5/20-4(a) (West 2012). This subsection provides first that a sale of a decedent's real estate requires a petition to the probate court. Thus, the representative must ask the probate court for permission to sell the real estate before selling the property. *Id.* Likewise, this subsection also provides the touchstone for the probate court's discretion, namely, whether a sale of the real estate is necessary for the proper administration of the decedent's estate. *Id.* In order to properly invoke section 20-6, then, the representative of the decedent's estate must ask for and receive the probate court's permission to sell the property, and, in deciding whether to grant leave to sell the property, the probate court considers whether such a sale is necessary for the proper administration of the decedent's estate.

¶ 22    Returning to section 20-6, we note that the condition precedent to employing subsection (b) is a "proceeding to sell *** real estate." 755 ILCS 5/20-6 (West 2012). Once the probate court has determined to engage in such a proceeding, subsection (b) may be invoked. Subsection (b) contains three components: (1) the court has the power to direct the sale of real estate free and clear of any existing encumbrances; (2) the existing encumbrances will be satisfied from the proceeds of the sale of the property; and (3) the court will determine and adjust the priorities of the claimants to the encumbrances. 755 ILCS 5/20-6(b) (West 2012). Focusing on the first component, we also note that, by its express terms, it applies to "all mortgage, judgment[,] or other liens *that are due*." (Emphasis added.) *Id.* In addition, the word "and," situated between the second and third components, is generally given a conjunctive meaning such that all of the terms linked by it must be performed together. See *County of Du Page v. Illinois Labor Relations Board*, 231 Ill. 2d 593, 605-06 (2008). We note, however, that "and" may have a disjunctive meaning, depending on the context. *Id.* at 606. Here, "and" makes more sense conjunctively, because a disjunctive use renders one or two of the components occasionally superfluous, in violation of the canon of construction that every part of a statute be given meaning and effect (*Winn v. Mitsubishi Motor Manufacturing of America, Inc.*, 308 Ill. App. 3d 1054, 1059 (1999)); likewise, if the legislature meant the disjunctive, it certainly could have easily used "or" to indicate a disjunctive construction (as it did in the first component of this very provision). See *In re Jaime P.*, 223 Ill. 2d 526, 538 (2006). Thus, the conjunctive "and" indicates that the

legislature intended that all three components of the provision be applied together, or they not be applied at all.

¶ 23    Although not a precedential decision, we note that in *In re Estate of Jump*, 2011 IL App (5th) 100466-U, the court interpreted section 20-6(b) in the same manner as we have above:

"In the instant case, the statute in question contains three components: first, that the court has the power to direct the sale or mortgage of the property; second, that existing liens be satisfied by the proceeds of the sale; and third, that the court determine and adjust the priorities of the claimants. The three clauses are connected by an 'and,' indicating the legislature's intent to have the provisions applied all together or not at all. Thus, the provisions of this statute must be read together. A plain reading of the statute therefore indicates that the court is not vested with discretion with regard to each of the three components but instead with the power to apply the subsection in its entirety." *Id.* ¶ 8.

¶ 24    Obviously, we cannot cite a nonprecedential decision as authority for our analysis. Rather, we cite it as an example of a court's reasoning and as a reasonability check. Insofar as *Jump* goes, then, our analysis and conclusion are neither novel nor unwarranted. Moreover, the court was analyzing precisely the same statute that is at issue in this case. Accordingly, our analysis is strengthened by knowing that another court, covering exactly the same ground, reached the same conclusion as we do: section 20-6(b) must be employed all together or not at all.

¶ 25    Continuing our examination of the statutory language, section 20-6(c) is also relevant. It states that the probate court may, "with the assent of the owner of a mortgage lien that is not due, direct that the property be sold *** and provide for the satisfaction of the lien out of the proceeds of the sale." 755 ILCS 5/20-6(c) (West 2012). First, the court may order the sale of a property under a mortgage that is not due at the time of the sale (with the mortgagee's assent), which is a circumstance distinct from the application of subsection (b). Second, the court may satisfy the lien from the proceeds of the sale, but subsection (c) does not indicate that it may adjust the lien priority or otherwise provide for *pro rata* satisfaction of the lien, unless the assent of the mortgagee implies that it may allow a short sale and subsequent satisfaction. All of these powers and conclusions flow from the plain language of subsection (c), given its ordinary and commonly understood meaning.

¶ 26    The interplay between subsections (b) and (c) helps to reveal the legislative intent. In the universe of mortgaged property subject to probate proceedings, there are two conditions: either the mortgage on the property is due at the time of the hearing, or it is not due at that time. If it is due (*i.e.*, the decedent or the representative of the decedent's estate has not made the required payments under the mortgage agreement), subsection (b) applies; if it is not due (*i.e.*, the payments required under the mortgage agreement are current), subsection (c) applies. Invoking either subsection must be done in the context of a proceeding to sell real estate (755 ILCS 5/20-6 (West 2012)), and the court must have determined that the sale was necessary for the proper administration of the decedent's estate (755 ILCS 5/20-4(a) (West 2012)).

¶ 27    There is a further difference in the application of the subsections. Under subsection (c), the assent of the mortgagee, or owner of the mortgage lien, is necessary to sell the property. Under subsection (b), the assent of the mortgagee is not necessary to sell the property. 755 ILCS 5/20-6(b), (c) (West 2012).

¶ 28    We now turn to the parties' arguments regarding the construction of section 20-6(b). The executor ultimately argues that section 20-6(b) empowers the probate court to direct the sale of the decedent's property free and clear of all encumbrances, to adjust the existing encumbrances, and to satisfy the adjusted encumbrances from the proceeds of the sale. We agree with the executor's conclusion, but we disagree with much of her reasoning.

¶ 29    The executor argues that section 20-6(b) is properly invoked when the decedent's property is "underwater," meaning that the indebtedness on the property is greater than the property's fair market value. While we might agree that such a situation may and should influence the probate court's thinking on whether the use of subsection (b) is necessary for the proper administration of the decedent's estate, we cannot accept the argument that subsection (b) automatically applies in situations where the decedent's property is underwater, because the plain language of the provision belies the claim. Subsection (b) states that the probate court may "direct the sale *** of the property free of all mortgage, judgment[,] or other liens that are due." 755 ILCS 5/20-6(b) (West 2012). By its very terms, subsection (b) applies only to situations involving property for which the mortgage is due at the time of the proceeding to sell it. (This is confirmed by looking at subsection (c), which expressly deals with property for which the mortgage is not due at the time of the proceeding.) Thus, while the consideration that a property is underwater may be important to the probate court in deciding whether a sale of that property is necessary for the proper administration of the decedent's estate, it has nothing to do with whether the property must be sold under the auspices of section 20-6(b).

¶ 30    The executor takes issue with the bank's interpretation of section 20-6 in the proceeding below. We need not consider her contentions, as we will next deal with the bank's construction of section 20-6(b) on appeal. Suffice it to say that, according to the executor, the plain language of this provision contradicts any attempt in the bank's construction to gainsay the conclusion that section 20-6(b) empowers the probate court to direct and oversee the sale of a decedent's property.

¶ 31    The executor also explains that her construction of section 20-6(b) is informed by consideration of the reasons for the law, the problems the law seeks to remedy, the purposes the law is seeking to achieve, and the consequences of different ways of construing the law. We do not believe that the executor's argument is well supported. While she cites a proper rule of statutory construction (see *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 15), she is unable to identify legislative history or other interpretations of the provision to support her claim that it was enacted to remedy the situation in which a decedent's property is underwater and the decedent's estate is insolvent or of minimal value, or that it was enacted to provide an avenue to maximize the value of the decedent's property (at the potential expense of the lienholders' interests). We note, however, that the considerations the executor cites may be useful to the court in determining whether a sale under section 20-6(b) is necessary for the proper administration of the decedent's estate. Accordingly, we will not further address the executor's arguments concerning the interpretation of section 20-6(b), particularly because they do not address the Probate Act as a whole or even all of the language in that section.

¶ 32    We now turn to the bank's construction of section 20-6(b). The bank makes two arguments. First, the bank argues that section 20-6(b) does not automatically trump a

foreclosure action brought under the Foreclosure Law. This is a manifestly true statement because, as we have seen, section 20-6 is employed at the discretion of the probate court.

¶ 33    The bank further argues that, in this circumstance, we should employ the principle of "first in time, first in right," citing *Cole Taylor Bank v. Cole Taylor Bank*, 224 Ill. App. 3d 696 (1992). While *Cole Taylor* deals with the first-in-time principle as regards lien priority, which is a circumstance not present in this case, we do not believe that the bank's invocation of the principle is completely inapt. We note that other areas of the law have enshrined the first-in-time principle. *E.g.*, *In re Marriage of Potts*, 297 Ill. App. 3d 110, 115 (1998) (obligations to first-in-time family must be fully met before obligations to later-in-time family can be considered); *In re Petition to Annex Certain Property to the City of Wood Dale*, 244 Ill. App. 3d 820, 827 (1993) (first-filed annexation petition is generally given priority); *In re Marriage of Alder*, 98 Ill. App. 3d 525, 526 (1981) ("[t]he court which first acquires jurisdiction retains its jurisdiction to the exclusion of coordinate courts"). We further believe that the analogy to lien cases invokes the principle sufficiently to raise the argument for our consideration. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (an argument not supported by pertinent authority is forfeited). Successfully raising the argument, of course, is not the same as prevailing on it, and the executor vehemently disputes the bank's conclusion.

¶ 34    The executor argues that, even under the first-in-time rubric, the bank still loses because she opened the probate case long before the bank filed its foreclosure action. The executor properly notes that, on June 22, 2012, she petitioned to probate the decedent's estate and that, on June 25, 2012, the probate court entered an order opening the estate for administration and appointing the executor to her position. The opening of the estate in probate occurred well before the bank's December 2012 initiation of the foreclosure action. According to the executor, opening the probate action subjected the entirety of the decedent's estate, including the subject property, to all of the powers of the probate court, including those under section 20-6 of the Probate Act. The executor argues that it was she who filed first and that pursuant to the first-in-time doctrine the probate court should have the exclusive jurisdiction over the judicially ordered sale of the subject property. We disagree.

¶ 35    As an initial matter, we note that the executor does not claim that the first-in-time doctrine is either inapplicable or preempted by one of the various exceptions to the doctrine. Likewise, we perceive nothing in the facts of this matter that would suggest that applying the doctrine is either improper or excepted. Accordingly, we accept its application here. The question then becomes, what initiates the cause of action for the purposes of determining who filed first?

¶ 36    Our analysis here is guided by analogy to section 2-619(a)(3) of the Code (735 ILCS 5/2-619(a)(3) (West 2012)), which provides a mechanism to secure the involuntary dismissal of a later-filed claim when an earlier-filed claim is already pending. The key in these circumstances is whether the parties are the same and the causes of action are the same. The same-parties requirement is satisfied where the litigants' interests are sufficiently similar even thought the litigants may differ in name or number. *In re Estate of Hoch*, 382 Ill. App. 3d 866, 869 (2008). Similarly, the same-action requirement is satisfied when the relief requested is based on substantially the same set of facts. *Id.* The key inquiry for the same-action requirement is whether both arise out of the same transaction or occurrence, and

not whether the legal theory, issue, burden of proof, or relief sought materially differs between the two actions. *Id.*

¶ 37    With these principles in mind, we cannot say that the probate action and the foreclosure action involve either the same parties or the same action. The probate action involved the executor, trying to distribute the estate according to the decedent's wishes. The foreclosure action involved the bank, and all others who have interests in the subject property, attempting to recover on the encumbrances on the subject property. Thus, the parties are not the same in the probate action and in the foreclosure action.

¶ 38    Further, the two actions did not arise out of the same transaction or occurrence. The probate action arose out of the decedent's death. The foreclosure action arose out of the decedent's failure to pay installments on her indebtedness to the bank. The motivating action or occurrence for each is different. Therefore, we cannot conclude that the two actions are the same for purposes of the first-in-time doctrine and its analogy under section 2-619(a)(3).

¶ 39    Based on our conclusions as to the parties and actions, we must reject the executor's claim that hers is the first-filed action. The actions are different, arising out of distinct occurrences or transactions, and the parties do not have similar interests in the actions. Thus, the fact that the executor's probate action was filed before the bank's foreclosure action does not mean that everything connected to the probate action must have priority over the foreclosure action.

¶ 40    If, however, we change our focus to the foreclosure action and the petitions for approval to sell the subject property, we get a clear result under the principles discussed above. Looking at the issue of whether the actions are the same, we see that each action invokes judicial oversight of the sale of the subject property. Each seeks to liquidate the subject property and to transfer it to a new owner free and clear of prior encumbrances. Thus, the transactions in each action are sufficiently similar under the first-in-time doctrine.

¶ 41    Likewise, the parties have the same interests. In the foreclosure action (and counterclaim) and in the petitions for approval, the parties on each side of the caption are the same, namely, the owner/estate/executor and the bank and other lienholders. In the two actions, each side has the same interests: the executor is seeking to satisfy all of the lienholders and to maximize the value received for the sale of the subject property; the bank is seeking to recover the indebtedness under its mortgage on the subject property and to maximize its recovery. The interests in the two actions are sufficiently similar to be able to deem that the parties are the same. Because the parties and the actions are the same, the action that was first filed takes priority. *Estate of Hoch*, 382 Ill. App. 3d at 869.

¶ 42    Here, on December 18, 2012, the bank filed its foreclosure action. On March 12, 2013, the executor filed her first petition for approval of the sale of the subject property. On May 28, 2013, she filed her counterclaim to the foreclosure action, and on August 23, 2013, she filed the second petition for approval, based on the August 15, 2013, contract to sell the subject property. We note that the executor does not specify when the contract underlying the first petition was signed. (In any event, we do not believe that the execution of a contract would necessarily serve to give an action seeking judicial approval of the sale precedence over an action filed after the execution of the contract but before the action based on it; although the argument could be made, it is not made here.) Thus, because the bank's foreclosure action was filed before the first petition for approval, the foreclosure action would have priority over the petition for approval.

¶ 43    This does not, however, end the inquiry. Whether and what kind of an action is first filed would seem, under these circumstances, to be factors a probate court should consider in determining whether to direct a sale pursuant to section 20-6. Further, the probate court should consider these factors in determining whether the sale is necessary for the proper administration of the decedent's estate. To determine the effect of the first-in-time doctrine here, we will consider below the probate court's exercise of discretion.

¶ 44    Returning to the bank's argument regarding section 20-6(b), the bank next contends that the section is largely irrelevant because the mortgagee chooses whether to allow a sale under the auspices of the Probate Act or the Foreclosure Law. In support, the bank cites *In re Estate of Funk*, 221 Ill. 2d 30, 93 (2006), which stated, "If a secured creditor does not wish to avail itself of [the benefits of probate administration], it retains the option of undertaking foreclosure proceedings on its own. Nothing in the Probate Act forecloses that remedy." Of course, the quoted passage has absolutely nothing to do with whether the probate court should proceed under the Probate Act and order the sale of the decedent's property or whether it should decline approval to sell in favor of a foreclosure proceeding. Instead, it deals with the mortgagee's choices, not the court's, and, as a result, *Estate of Funk* is inapposite. Moreover, under the circumstances of this case, the bank's argument is unavailing because we are deciding both whether the probate court had the power to order the sale under the Probate Act and whether it should have exercised its discretion to do so, thereby eclipsing the bank's first-filed foreclosure action. In other words, this case involves a question of the probate court's discretion, not the bank's discretion. Accordingly, we reject the bank's argument, which effectively attempts to edit the probate court's discretion out of section 20-6(b).

¶ 45    The bank also argues that the Foreclosure Law and section 20-6 of the Probate Act are roughly equivalent, with the Foreclosure Law being somewhat more detailed and specific. The bank argues that, because the more specific law applies over the more general, the Foreclosure Law should apply. There are at least two problems with the bank's argument.[1]

¶ 46    First, the canon of construction that the more specific law controls over the more general law seems inapposite. As noted, when construing a statute, the cardinal rule is to ascertain and give effect to the legislature's intent in enacting the statute. *Moore v. Green*, 219 Ill. 2d 470, 479 (2006). Where two statutes conflict, however, we must attempt to construe them together, if reasonable and possible. *Id.* In essaying this construction, we may consider the purposes of the statutes, the problems that they target, and the goals that they seek to achieve. *Id.* at 479-80. In general, we will presume the more specific provision to control over the more general provision. *Id.* at 480. Here, according to the bank, both statutes cover the same ground in the same way, with the Foreclosure Law being more detailed. This assertion does not appear to invoke the specific-versus-general canon of construction, because the bank does not identify any way in which the laws conflict. In fact, the bank suggests that they are roughly equivalent, thus undercutting its argument that the canon should apply. This also leads into the second, and more important, problem with the bank's argument.

¶ 47    The subject matter of the two statutes is slightly, but significantly, different. The Foreclosure Law provides for a forced judicial sale of real property, at the behest of the

---

[1]We note that the executor makes the converse argument: it is the Probate Act that is more specific here, so it should apply. For the same reasons, we reject this contention.

mortgagee. 735 ILCS 5/15-1404 (West 2012). By contrast, the Probate Act provides for the private sale of property, by leave of and overseen by the court and if necessary for the proper administration of the decedent's estate, at the behest of the executor or administrator of the estate. 755 ILCS 5/20-6 (West 2012). In a foreclosure setting, the mortgagee has initiated the action and the court forces the sale of the property. 735 ILCS 5/15-1404 (West 2012). In the probate setting, the representative of the decedent's estate has searched for a willing buyer and seeks leave of the court to consummate the sale. 755 ILCS 5/20-6 (West 2012). Both provisions protect the rights of other lienholders of the property, but the focus of each provision is different. In a foreclosure action, the focus is on maximizing the mortgagee's recovery; in the probate action, the focus is on maximizing and properly administering the decedent-mortgagor's estate. These different purposes and focuses demonstrate that the two laws do not actually cover the same subject matter, even though they adopt similar procedures to protect the rights of lienholders that will be affected by the sale of the property and they involve the court in overseeing the process. Accordingly, we believe that the specific-versus-general canon of construction does not apply under the circumstances of this case, and we do not employ it in construing section 20-6.

¶ 48                                  B. The Probate Court's Rulings

¶ 49        We turn next to the probate court's rulings regarding section 20-6 and the court's exercise of its discretion. When a matter is committed to the trial court's discretion, we review the trial court's judgment for an abuse of that discretion. *E.g.*, *Fraser v. Jackson*, 2014 IL App (2d) 130283, ¶ 28 (the decision whether to impose sanctions is committed to the trial court's discretion and that decision will be reversed only for an abuse of that discretion); *Powell v. Dean Foods Co.*, 2013 IL App (1st) 082513-B, ¶ 90 (the admissibility of evidence subject to a probative-value-versus-prejudicial-effect balancing test is committed to the trial court's discretion and the court's decision will not be reversed absent an abuse of that discretion); *Gastroenterology Consultants of the North Shore, S.C. v. Meiselman*, 2013 IL App (1st) 123692, ¶ 9 (the grant or denial of a preliminary injunction is a matter committed to the sound discretion of the trial court, and its decision will not be disturbed absent an abuse of that discretion). Here, based on the terms of section 20-6, whether to employ subsection (b) was a matter within the probate court's discretion, and we review its decision for an abuse of that discretion. An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *AT&T v. Lyons & Pinner Electric Co.*, 2014 IL App (2d) 130577, ¶ 24.

¶ 50        We are somewhat hampered by the lack of a verbatim transcript of the *in camera* discussion before the probate court ruled. Nevertheless, there is enough information in the record to allow us to determine what occurred and, more importantly, how or whether the court exercised its discretion.

¶ 51        Of import to our understanding of the probate court's reasoning and exercise of discretion is the parties' open-court explanation of their positions during the *in camera* discussion. The executor's counsel noted that he understood the probate court's disagreement with the executor's position that section 20-6(b) empowered the court to assent to a sale of the decedent's property, because she had not been able to present authority (apparently beyond the plain language of the provision itself) to support her request to direct a short sale extinguishing the existing encumbrances and distribute the resulting funds in a *pro rata*

fashion. This summarization suggests that the probate court simply refused to acknowledge the plain language of section 20-6 and that it disbelieved that it had any power under the Probate Act to dispose of the property once a foreclosure action had been initiated under the Foreclosure Law.

¶ 52    The probate court's oral holding confirms our understanding:

"I think it's time we sort out at least what I find, inconsistency between the [Foreclosure Law] and the cited portion of the [P]robate [A]ct that seem to give me almost unlimited power in this situation when read with the paragraphs preceding it. ***

And I'm hoping that we will find out whether or not in a probate situation a judge can strip, change, amend, vacate a foreclosure and let the estate sell the property for whatever it can get and divvy up the proceeds."

¶ 53    Based on the foregoing, namely, the executor's summary of the *in camera* discussion and the quoted portions of the probate court's oral holding, we conclude that the probate court did not engage in any exercise of discretion in deciding not to apply section 20-6 to the proceedings. Instead, the probate court seemed almost nonplussed by section 20-6's grant of authority and believed that there was inconsistency between two statutes that, as we have discussed, are procedurally similar but deal with distinct subjects. Moreover, the probate court characterized the issue as one of priority between competing actions (can a probate court "strip, change, amend, [or] vacate a foreclosure and let the estate sell the property for whatever it can get and divvy up the proceeds") instead of whether to employ its powers under section 20-6.

¶ 54    Given that the probate court did not exercise its discretion here, the issue turns to the remedy for this failure. Generally, where a trial court does not exercise its discretion under a statute, because it erroneously believes that it has no discretion (or fails to recognize that the provision confers discretion), the trial court has committed error. *Estate of Oglesby v. Berg*, 408 Ill. App. 3d 655, 659 (2011). Nevertheless, such an error might be harmless, and, if the error is, in fact, harmless, then the trial court's judgment need not be disturbed. *Id.*

¶ 55    The question now becomes whether the probate court's failure to exercise its discretion was harmless error. For us to determine that harmless error occurred, we must be able to say that, unequivocally, there is no set of circumstances under which the probate court could have plausibly decided in favor of the executor. See *People v. Higgins*, 71 Ill. App. 3d 912, 927-28 (1979) (denying the defendant's motion was the " 'only' " proper conclusion that could have been reached).

¶ 56    We have outlined above some of the factors a court must consider in determining whether to proceed under section 20-6. The touchstone is whether an agreed sale, between the estate and a buyer and overseen by the court, is necessary for the proper administration of the decedent's estate. 755 ILCS 5/20-4(a) (West 2012). We have also noted that the priority between competing claims, such as an action to foreclose on the property versus a request for leave to sell the property under section 20-6, is a factor the court should consider. Here, we determined that the executor's request for leave to sell the property was subordinate to the bank's foreclosure action. That priority does not, however, decide the matter, because the question of whether a sale under section 20-6 is necessary for the proper administration of the decedent's estate remains paramount. Further, the parties might deem other factors relevant. Examples might be: maximizing the value of the estate's assets; maximizing the

- 13 -

recovery of the estate's creditors; and the public policy underpinning a secured creditor's ability to recover its debt from the estate.

¶ 57 The probate court did not focus on the issue of the proper administration of the decedent's estate in considering the executor's petitions to sell the subject property, and, in the absence of such an inquiry, we cannot predict how the court would or should exercise its discretion. We cannot foresee whether the probate court would allow the executor's request following argument on the issue of whether the sale is necessary for the proper administration of the decedent's estate and so we cannot determine whether the probate court's failure to exercise its discretion was harmless error. See *People v. Pinkston*, 2013 IL App (4th) 111147, ¶ 18 ("We cannot foresee whether the court would have allowed defendant's discovery request in whole or in part following an opportunity to argue good cause. We cannot determine whether the court's failure to exercise its discretion was harmless."). Because we cannot say that the error here was harmless, we must remand the cause to allow the probate court to exercise its discretion under section 20-6, after considering whether the executor's request is necessary for the proper administration of the decedent's estate.

¶ 58                                               III. CONCLUSION

¶ 59 For the foregoing reasons, the judgment of the circuit court of Lake County is reversed, and the cause is remanded to allow the trial court to properly exercise its discretion under section 20-6 of the Probate Act.

¶ 60 Reversed and remanded.